## COLUMBIAN ENAMELING & STAMPING COMPANY
### *v.* BURKE.

[No. 5,625. Filed March 27, 1906.]

1. MASTER AND SERVANT.—*Negligence.—Works, Ways and Machinery.—Duty to Keep in Repair.*—The master is liable to his servant for injuries caused by such master's failure to exercise ordinary care in keeping free from defects his works, ways and machinery. p. 520.

2. PLEADING. — *Complaint. — Notice. — Constructive.—Defects.— Master and Servant.*—A complaint by the servant against the master alleging that the master had notice of the defects and the servant had not is sufficient, and such allegation includes actual and constructive notice. p. 521.

3. MASTER AND SERVANT.—*Latent Defects.*—Reasonable care requires the master, but not the servant, to search for latent defects. p. 521.

4. PLEADING.—*Master and Servant.—Assumption of Risk.—When Special Allegations Control General.*—The special allegations in an action by the servant for injuries caused by the master's negligence will not control general allegations of non-assumption of risk unless the assumption can be held as a matter of law from the special allegations. p. 522.

5. MASTER AND SERVANT.—*Works, Ways and Machinery.—Safety.*—The servant has the right to rely upon the safety of the works, ways and machinery unless defects are obvious. p. 522.

6. APPEAL AND ERROR. — *Weighing Evidence. — Master and Servant.—Negligence.—Question for Jury.*—Where the evidence is conflicting, in an action by the servant against his master for damages caused by such servant's attempting to tilt a large bottle of acid so that a truck could be placed under it and while tilting it the defective cleat broke, causing the bottle to fall and the acid to splash, some of it striking him in the face and eyes and causing injuries, the question of negligence is for the jury and its verdict will not be disturbed on appeal. p. 523.

From Clay Circuit Court; *Presley O. Colliver,* Judge.

Action by Charles O. Burke against the Columbian Enameling & Stamping Company. From a judgment on a verdict for plaintiff for $1,091.66 2-3, defendant appeals. *Affirmed.*

*S. M. McGregor* and *Lamb, Beasley & Sawyer,* for appellant.

*A. W. Knight, J. O. Piety* and *George A. Knight,* for appellee.

WILEY, J.—Appellee, who was plaintiff below, recovered a judgment against appellant for personal injuries received while in its employ, alleged to have resulted from its negligence. The complaint was in a single paragraph, to which a demurrer was addressed and overruled. Answer in denial. Trial by jury, resulting in a general verdict for appellee. Appellant's motion for a new trial was overruled. At the conclusion of the evidence appellant moved that the court instruct the jury to return a verdict in its favor, and this motion was also overruled.

Overruling the demurrer to the complaint and the motion for a new trial are assigned as errors.

The complaint alleges that appellant was in the business of manufacturing enameled ware; that at and prior to June 24, 1903, appellee was in appellant's employ "in and about the manufacture of its goods and wares;" that in the process of such manufacture the appellant immersed its goods in their unfinished state in certain dangerous acids, contained in large tanks; that said tanks were supplied with acids from large bottles; that about the bottles was constructed a framework or crate of wood; that the bottles containing the acid were conveyed to the tanks by means of trucks; that in loading the bottles upon the trucks it was necessary to take hold of the framework about the bottles, and by means thereof tip the bottles to one side, so as to permit the truck to pass under and receive them; that it was one of appellee's duties to aid his fellow workmen in

holding bottles filled with acid in the loading of the bottles upon the trucks preparatory to their being transferred to the tanks; that on the date last named, while appellee was in the performance of his duties, and in the act of tipping one of said bottles filled with acid, so as to permit the truck to pass under and receive it, he had hold of the framework about it, and while so holding to the framework it broke and gave way, causing the bottle to tip backward and to throw out a large amount of acid, which struck appellee in the face and eye, by which he was severely injured; that the framework gave way because it was defective and insecure and insufficient in strength to withstand the handling of the bottles; that the accident was occasioned because of the defective condition of said framework, without any fault on the part of appellee, and while he was exercising due care and caution. It is further alleged that appellee had no knowledge or notice of the insecure condition of the framework about the bottle, and could not have ascertained the same by the exercise of ordinary care; that appellant had notice of the defective condition, or could have had by the exercise of ordinary care; and that appellee's injury was due to appellant's negligence as aforesaid.

The objections urged to the complaint are (1) that it shows that the injury of which appellee complains was the result of a risk assumed by him; (2) that the general allegation in the complaint of want of knowledge on appellee's part of the defective and insecure condition of the crate is overcome by the specific allegations of the complaint showing knowledge on his part, or, that he could have known by the exercise of ordinary care.

We do not think that either of these objections is well taken. The law is well settled that it is the duty of a master to exercise ordinary care and diligence in

1. providing safe and suitable tools and appliances to servants who are engaged in his service, which will be safe for the servants to use in the discharge of their

duties to the master, pursuant to the contract of employment. As was said by this court in the case of *Baltimore, etc., R. Co.* v. *Amos* (1898), 20 Ind. App. 378: "It is also the master's duty * * * to exercise a reasonable supervision over such tools and to exercise ordinary care to keep them in safe condition for the use of the servant. * * * The master is required to take notice not only of the deterioration of tools and appliances by continued use, but also of such deterioration by natural or ordinary decay as may be discovered by reasonable inspection, in any material which may be provided by him as tools or as parts thereof. The servant has a right to rely upon the master's observance of these requirements and performance of these duties." *Island Coal Co.* v. *Risher* (1895), 13 Ind. App. 98; *Salem Stone, etc., Co.* v. *Griffin* (1894), 139 Ind. 141; *Louisville, etc., R. Co.* v. *Hanning* (1892), 131 Ind. 528, 31 Am. St. 443.

It has also been held that notice on the part of the master of defects in machinery or appliances, and want of notice on the part of the servant, may be alleged in general terms, and such allegations will include both actual and constructive knowledge. *Louisville, etc., R. Co.* v. *Miller* (1895), 140 Ind. 685; *New Kentucky Coal Co.* v. *Albani* (1895), 12 Ind. App. 497.

An averment in the complaint that the servant did not know of such defect or danger is sufficient as a matter of pleading to rebut or deny not only actual knowledge, but also implied or constructive knowledge or notice. *Baltimore, etc., R. Co.* v. *Roberts* (1903), 161 Ind. 1; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297; *Chicago, etc., R. Co.* v. *Richards* (1901), 28 Ind. App. 46.

It has been held that reasonable care on the part of the master demands inspection and search for latent defects, while reasonable care on the part of the servant requires attention and observation of open or obvious defects and perils. *Louisville, etc., R. Co.* v. *Quinn* (1896), 14 Ind. App. 554.

In the case of the *City of Wabash* v. *Carver* (1891), 129 Ind. 552, 13 L. R. A. 851, it was held that special allegations will not control general allegations of non-assumption of risk unless it can be held as a matter of law that plaintiff assumed the risk.    See, also, *Cincinnati, etc., R. Co.* v. *Darling* (1892), 130 Ind. 376; *Salem Stone, etc., Co.* v. *Griffin, supra.*

We think it may be stated as a general rule that a servant may rely upon the safety of such implements as are provided by the master for his use in the master's service, unless their defectiveness is open to the observation of an ordinarily prudent man.    *Baltimore, etc., R. Co.* v. *Amos, supra; Arcade File Works* v. *Juteau* (1896), 15 Ind. App. 460.    A servant engaged in his master's service has a right to presume that his employer has done his duty and furnished appliances which render the work reasonably safe.    *Indiana, etc., R. Co.* v. *Bundy* (1899), 152 Ind. 590; *Brazil Block Coal Co.* v. *Gibson* (1903), 160 Ind. 319, 98 Am. St. 281; *Pittsburgh, etc., R. Co.* v. *Parrish* (1902), 28 Ind. App. 189, 91 Am. St. 120; *Chicago, etc., R. Co.* v. *Lee* (1902), 29 Ind. App. 480.    As a general rule it may be stated that an employe is not required to make inspection of the tools, appliances, etc., which his master has furnished him. . The law does not place upon him that burden or responsibility.    The law goes only so far as to lay upon him the duty to observe defects that are open, visible and apparent.    *Linton Coal, etc., Co.* v. *Persons* (1894), 11 Ind. App. 264; *Gould Steel Co.* v. *Richards* (1903), 30 Ind. App. 348.    Applying these settled rules to the facts stated in the complaint, we are clearly of the opinion that the objections urged by appellant's counsel can not be maintained.    There was no error in overruling the demurrer.

Two of the reasons assigned for a new trial are (1) that the verdict was not sustained by sufficient evidence; and (2) that it was contrary to law.    Under the propositions

relied upon for a reversal counsel for appellant assert that the evidence fails to establish negligence on the part of appellant, and that there is "no evidence to support the verdict," and hence it is not sustained by sufficient evidence and is contrary to law. In their argument, however, counsel do not discuss these propositions, and say that they do not care to discuss them, and only call our attention to them and the authorities cited under them.

At the conclusion of the evidence appellant moved that the court give a peremptory instruction in its favor. If appellant was entitled to such instruction it was 6. error to refuse it, and in reviewing the question thus raised the sufficiency of the evidence to sustain the verdict may be considered. To determine this question it is important to have before us the facts descriptive of the manner in which appellee was injured. The acid used by appellant was put in tanks or vats from large bottles. These bottles were incased in wooden crates, with cleats attached for handling the same. The crates containing the bottles were conveyed to the vats by means of a truck. Appellee and a co-employe went to get a bottle of acid to put in the vat. Appellee went to where the bottles were, and was moving one of the crates out, and went to tip it up so his co-employe could put the truck under it, and while in the act of tipping it the cleat came off, the bottle fell back to the ground, and the acid flew in his face, etc. The accident occurred between 11 and 12 o'clock at night, and the nearest light was an electric light forty or fifty feet from where he was injured.

As stated by appellee: "I tipped the crate over so the truck could be run under it. The cleat gave way, and the bottle fell back, and the acid flew in my face and eyes, and after that I could not see anything. I never saw the box [crate] again. * * * The cleat appeared to be sound when I took hold of it. I did not know it was unsafe or loose. It appeared to be all right."

The co-employe Zollinger, who was assisting appellee, stated in one part of his examination that the cleat broke and came off, and in another that it did not.   Appellee's father testified that he was working within forty-five or fifty feet of his son when he was injured, and went to him in three or four minutes.   He stated that he saw the bottle and crate the next evening, and examined them; that he found one cleat off on the ground; that it looked rotten; that nails were sticking in it; some of the nails were in the box, or crate, and some in the cleat; that the cleat was rotten, about two feet long, three or four inches wide, and one inch thick, and lying on the ground beside the bottle.   He also testified that he did not see any other box "around there with cleats off."   On behalf of appellant witnesses testified that on the following day they found one of the bottles moved out from the others; that the cork was out; that the acid had spilled; that the cleats were on the crate; and they saw no loose or rotten cleats.

This is all the evidence that throws any light upon the manner in which appellee was injured, and upon this evidence counsel for appellant insist that it was the duty of the court to direct a verdict.   We must determine from these facts whether as a matter of law they acquit appellant of actionable negligence.   If they do, then it was error to refuse the instruction.   But, under the evidence before us, the question of appellant's negligence and appellee's freedom from contributory negligence becomes a mixed question of law and fact.   We can not say that the evidence is without conflict.   On the contrary, upon the vital question at issue, there is a sharp conflict.   This being true, that question should have been submitted to the jury under proper instructions.

Counsel for appellant make some effort to discredit the evidence of appellee's father, upon the theory that it is not shown that the crate and bottle which he saw the next day, and with the cleat off the crate, were the ones that

appellee was handling when he was injured. They urge that this fact is emphasized by the evidence of other witnesses who say that they did not, upon the following day, observe any such conditions. Appellee's father was asked and he answered this question: "If you saw this bottle and crate state that fact to the jury and when you saw them? A. I saw them the next day." Under this evidence it was a question for the jury to determine whether he saw the identical crate and bottle. It was also the province of the jury to determine from the conflicting evidence whether the bottle fell back by reason of the cleat's breaking, and whether it was rotten. Where the facts are controverted, or where negligence may or may not be inferred from facts proved, the question of negligence must be submitted to the jury. *City of Indianapolis* v. *Mitchell* (1901), 27 Ind. App. 589, and authorities cited; *Young* v. *Citizens St. R. Co.* (1897), 148 Ind. 54, and authorities cited.

There is evidence that the accident was caused by the cleat's coming off of the crate, and that the reason it came off was because it was rotten. Appellee testified that it looked all right to him. He was not bound to make an inspection of it, for he was only chargeable with the duty of observing defects that were visible, open and apparent. *Linton Coal, etc., Co.* v. *Persons, supra; Gould Steel Co.* v. *Richards, supra; Baltimore, etc., R. Co.* v. *Amos, supra.* If the cleat, or the crate, was defective, by reason of which the former came off, the defect might have been discovered by a reasonable inspection, and, as we have seen, this duty does not rest upon the servant, but upon the master. *Louisville, etc., R. Co.* v. *Quinn* (1896), 14 Ind. App. 554.

The rule is firmly established in this jurisdiction that where there is a conflict in the evidence, upon a material question at issue, it is an invasion of the province of the jury for the trial court to direct a verdict. This court, in *Hamilton* v. *Hanneman* (1898), 20 Ind. App. 16, said: "It is within the power of the trial court to control or direct

a verdict by instructions, only where there is a total absence of evidence upon some essential issue, or where there is no conflict, and the evidence is susceptible of but one inference." The evidence before us, as to the essential issues for determination, is conflicting. It was the sole province of the jury to determine its probative force, as well as to determine what facts it established, and what legitimate inferences were deducible therefrom.

There was no error in refusing to give the instruction. The judgment is affirmed.