## Miami Coal Company *v.* Gardner.

[No. 7,499.   Filed March 13, 1912.]

1. MASTER AND SERVANT.—*Action for Injuries.—Complaint.—Assumption of Risk, Allegations Negativing.*—The averments of a complaint by a servant against the master for personal injuries are sufficient to take the alleged risk which caused the plaintiff's injury from among those assumed by his employment, where it is alleged that for a long time prior to the day on which plaintiff received his injury, the defendant knew or might have known of the dangerous position of a water-pipe with reference to a track, and that the wheels of cars operated over said track were likely to strike said pipe and thereby derail the cars; that plaintiff was in defendant's employ as a coal miner, and on the day of his injury was directed by defendant's bank boss to drive a mule and haul coal in cars on said track, which he did in obedience to said direction; and that plaintiff was given no notice and had no notice or knowledge of the position of said water-pipe with reference to said track or that it was dangerous.   p. 633.

2. MASTER AND SERVANT.—*Action for Injuries.—Defective Appliance.—Knowledge of Master.—Complaint.—General Averments.*—The allegations in a complaint in a servant's action for personal injuries, that defendant negligently loaded with coal a defective and worn out car and negligently furnished same to plaintiff to be hauled upon defendant's track, and that defendant had knowledge that said car was defective and dangerous, sufficiently allege knowledge by the defendant, either actual or constructive, where there are no specific averments to overcome the general averments that defendant negligently furnished the car and knew its defective condition at the time.   p. 634.

3. MASTER AND SERVANT.—*Action for Injuries.—Instructions.—Application to Issues.*—Instructions defining the employee's duty to

observe and avoid all known or obvious perils of the place in which he is working, stating that he assumes the risk arising therefrom; that he is not bound to search for defects, but has a right to rely upon the master having performed such duty; that it is the duty of the master to know and that he is presumed to know of defects and dangers in his servant's working place, machinery, tools and appliances that should have been discovered by ordinary care, and relating to the duty of the master to furnish and maintain safe places, tools and appliances for the employee, are entirely proper and applicable to the issues tendered by averments of the complaint that defendant knew of the defective condition of the track over which its coal cars were operated, and that defendant negligently furnished a defective car with full knowledge of its defect at the time.  p. 635.

4. MASTER AND SERVANT.—*Instructions.—Application to Issues.— Burden of Proof.—Harmless Error.*—Where the complaint in an action by a servant for personal injuries averred that defendant knew of certain defects in a car furnished to plaintiff at the time it was furnished, an instruction which places upon the plaintiff the burden of proving not only that defendant knew of the defect, but also of proving that defendant had knowledge thereof in time to have had the car repaired, was not harmful to the defendant. p 637.

5. APPEAL.—*Verdict.—Conflicting Evidence.*—A verdict on conflicting evidence will not be disturbed on appeal.  p. 637.

From Hendricks Circuit Court; *James L. Clark,* Judge.

Action by John Gardner against the Miami Coal Company to recover for personal injuries. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Lamb, Beasley, Douthitt & Crawford, S. M. McGregor, Enloe & Pattison,* for appellant.

*Brill & Harvey, G. S. Payne, Wymond J. Beckett,* for appellee.

HOTTEL, J.—This was a suit by appellee for personal injuries alleged to have been sustained by him while in the employ of appellant in its coal mine.

The action was founded on the alleged violation by appellant of common-law duties which it owed to appellee as one of its employes.

It appears from the complaint that appellee was in the

employ of appellant, engaged in the regular duty of digging and mining coal in said mine, but at the particular time of receiving his alleged injuries he was, at the request of appellant's bank boss, engaged in driving a mule hitched to two coal-cars, hauling coal along one of the entries of said mine. His work and his duties in connection therewith required him to ride on the coupling between said two cars. The cars in which he hauled said coal were operated along a narrow railway track in said entry (in this case an air course). Rooms and openings opened into the mine off said entry or air course. Appellant placed a water-pipe along its said track in said entry, paralleling said track up to a point opposite, or nearly opposite, one of the rooms which opened off of said entry, at which point said water-pipe ran under said track into said room. Appellant was so maintaining said water-pipe with reference to said track at the time appellee received his alleged injuries. At a point near said room, and near the point where said water-pipe passed under said track, the front car of the two, upon the coupling of which appellee was riding, in hauling coal as aforesaid, was derailed, and appellee was caught between the cars, and his left leg was so crushed, bruised and mangled that he was obliged, as a result thereof, to submit to two amputations.

The complaint is in four lengthy paragraphs, and we think a copy of them unnecessary to a correct understanding of the questions presented by this appeal.

The theory of the first paragraph is that appellant was guilty of negligence in allowing and permitting said water-pipe to be too near the east rail of said track over which said coal-cars were operated; that said pipe, after coming out of said room off of said entry and crossing under the track, made an elbow at the point where it turned to run parallel with said track, which elbow was perpendicular, and extended from two and one-half to three inches above the top of said rail, and so near to it that cars operated thereon were likely to strike said pipe, and be thereby derailed; that

at the time appellee received his alleged injuries, the front car of the two between which he was riding, hauling coal as aforesaid, did so strike such pipe, and was thereby derailed, with the result that appellee was injured as charged in said first paragraph.

The second paragraph of the complaint, in addition to charging the negligence of appellant with reference to permitting said water-pipe to be too near said track, charges also that appellant negligently loaded with coal a defective and worn-out car, and negligently furnished it to appellee and placed it on the track for appellee, to be used by him in hauling coal, as aforesaid; that the particular defects of the car were that the spindle of said car was so badly worn that it permitted the wheels to be loose and to have more play than was necessary and safe, and that the axle to which said wheels were attached was not securely fastened to said car, but was loose and moved backward and forward under the bed of the car, thereby permitting said car to run in a zigzag manner, which prevented it from running straight and steady on the track, and tended to derail it; that said car was thereby rendered dangerous; that, by reason of the defective condition of said wheels and axles, the front wheel of said car struck said water-pipe, and said car was thereby derailed. The theory of such second paragraph is, in effect, that appellee's injuries were caused by the combined negligence of appellant in permitting said water-pipe to be too near its track, and in furnishing appellee, for his use, an old car defective in the manner set out.

The third paragraph rests solely on the defective condition of the car.

The fourth paragraph also relies solely on the defective condition of the car, and in addition to the defects charged in the second and third paragraphs, alleges that the axle to which said wheel was attached was not securely fastened to the bed of the car; that the strap fastening it to said car

was loose, and thereby permitted said wheels to be moved backward and forward under the bed of said car, and permitted said car to run in a zigzag manner, and caused the bed of said car to swing from side to side, from four to eight inches out of a direct line, thus tending to throw said car off the track, derail it and rendering it dangerous.

To each paragraph of the complaint appellant filed a demurrer, which was overruled. The only answer was a general denial. The trial resulted in a verdict for appellee in the sum of $2,600. Appellant's motion for a new trial was overruled.

The errors relied on in this court present the question of the sufficiency of each paragraph of the complaint as against a demurrer, and the ruling of the court below on the motion for a new trial. The only objection urged against the first paragraph of the complaint is that the defects and dangers alleged therein were open and obvious, and, therefore, incident to the employment, and were such risks as were assumed by the employe. The averments of said paragraph, in addition to showing that appellant, for a long time prior to the day on which appellee received his injury, knew or might have known, of the dangerous position of said water-pipe with reference to its said track, and knew that the wheels of cars operated over said track were likely to come in contact with said water-pipe, and be thereby derailed, further show that appellant gave appellee no notice or warning of said dangerous condition of said pipe; that appellee was employed as a coal miner to assist in digging and mining coal in said mine; that on the day of appellee's injury, appellant by its bank boss requested and directed appellee to take charge of and drive a mule until another driver could be secured, and that appellee, in obedience to such orders and directions, undertook to drive said mule temporarily, and to haul coal along said entry in said mine; that appellee had no notice or knowledge that said

water-pipe was in such close proximity to said rail of said track, or that it was dangerous. These averments are sufficient to take the alleged risk, which caused appellee's injury, from among those assumed by him at the time of his employment.

The second paragraph is objected to on the ground that "appellant is not shown to have had actual knowledge, and there is no averment to show that the defect existed for a sufficient length of time to have charged the appellant with the duty of repairing the car." This paragraph is not open to this objection for two reasons: (1) As before shown, the paragraph alleges that "defendant negligently loaded with coal a defective and worn-out car, and negligently furnished to this plaintiff, and placed upon the track for this plaintiff to haul, a car that was worn-out and defective." *Brazil Block Coal Co.* v. *Gibson* (1903), 160 Ind. 319, 328, 98 Am. St. 281; *Standard Oil Co.* v. *Fordeck* (1904), 34 Ind. App. 181, 187; *Columbian Enameling, etc., Co.* v. *Burke* (1906), 37 Ind. App. 518, 522, 117 Am. St. 337. (2) This paragraph further alleges that "the defendant had notice and knowledge when it so furnished said car to this plaintiff that said car was defective, as aforesaid, and thereby dangerous for this plaintiff to use down said incline and along said air course." This averment covers knowledge either actual or constructive. *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290, 297; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 300.

There are no specific averments that overcome the general averments that appellant negligently furnished the car in the first instance, and that it knew its alleged condition when it furnished it.

The objections to the third and fourth paragraphs rest practically on the same grounds urged against the second, and need not therefore be further considered. We think each paragraph of complaint good as against the objections urged.

The first grounds of the motion for new trial insisted on relate to the refusal of the court to give instructions tendered by appellant. Without going into the details of the instructions tendered by appellant and refused by the court, it is sufficient to say that out of the twenty-four instructions so tendered all but three were given, and a careful examination of all the instructions given, including those given by the court on its own motion, convinces us that every material and essential element of the refused instructions were covered by those given.

It is urged against instructions six, seven, eight and thirteen, tendered by appellee and given by the court, that in each "the jury is charged that it was appellant's duty

3. to inspect, and that if the defects complained of could have been discovered by appellant in the discharge of its duty in that respect, appellant would be held liable for the existence of such defects." In support of this objection it is insisted that "the issue of inspection and failure to make the same is not tendered in any paragraph of the amended complaint," and that said instructions were not, therefore, applicable to the pleadings and issues.

The first paragraph of the complaint alleged, in substance, that appellant knew of the condition of said water-pipe, and its close proximity to the rail of said track over which said coal-cars were operated, and the danger of derailment therefrom. Paragraphs two, three and four, as heretofore indicated, alleged that appellant negligently furnished a worn-out and defective car, and that it knew such condition of said car existed at the time it so furnished it.

Instruction six, which is general, defines the employe's duty with reference to his being required to observe and avoid all known or obvious perils of the place in which he is working; tells the jury that such employe assumes the risk of dangers arising therefrom, that he is not bound to search for defects; but that he has a right to rely on the master's

having performed such duty, unless the defects and dangers are of such a character as to be obvious to said employe.

That part of instruction seven, involved in the objection thereto, simply told the jury that it is the duty of the master to know, and the master is presumed to know, of any defects and dangers in his servants' working place, tools, machinery and appliances, that would have been discovered by the exercise of ordinary care in inspecting them.

Instruction eight relates to the duties of the master to exercise reasonable care to furnish and maintain, in the first instance, safe places, tools and appliances for the employe, and tells the jury that such duty is a continuing one, and that ''to the end that the employe's working place may be kept reasonably safe, it is the duty of the employer to exercise ordinary care to make reasonable inspection for defects and dangers which are not open and obvious, and if the employe is injured without his fault, through dangers and defects of his working place, which could have been discovered and remedied by the employer, by making reasonable investigation, inspection and search for such defects, then the law holds the employer liable for the existence of such defects the same as if they were actually known to him.''

Instruction number thirteen applies the general principles declared in instructions six, seven and eight to the facts of this particular case.  These instructions accurately state the law, and no objection is made to them on account of any error in this regard, but the only objection is that they are not applicable to the issues tendered by the pleadings.  We think it clear that the instructions were entirely proper and applicable to the issues tendered by the averments in the first paragraph of the complaint—that defendant knew of the defects connected with its track—and to the issues tendered in each of the other paragraphs by the averment that defendant furnished a defective and worn-out car, and knew its defective condition at the time it was furnished.

It is urged against instruction one, given at the request of appellee, that it told the jury that it was alleged in the third paragraph of complaint that ''appellant knew of the defects in the car in time to have repaired them,'' and that there is no such allegation in the third or any other paragraph. It is true that no paragraph of the complaint contains the averment mentioned, but each paragraph contains the averments upon said subject before referred to, which, in effect, include the averment mentioned, and appellant was certainly not harmed by the court imposing on appellee the burden, of proving not only that appellee knew when he furnished said car that it was old, worn and defective, as described in said paragraph of complaint, but the additional burden of proving that appellant knew of such condition of said car in plenty of time to repair it before the accident.

Instructions ten, eleven and twelve, given at the request of appellee, apply to the second, third and fourth paragraphs of the complaint, respectively, and practically the same objection is made to each of these instructions as is urged against instruction one. What we have said in reference to the objection to instruction one, applies to ten, eleven and twelve, except we should add that none of said last-mentioned instructions contains any statement that the respective paragraph of complaint to which each respectively applies contains the averment complained of in instruction one; but each contains the same statement of the law applicable to appellant's knowledge as that considered in instruction one, and, for the reasons there stated, were proper and applicable to the issues tendered by the respective paragraphs of complaint to which they were addressed.

Lastly, appellant insists that the verdict of the jury is not sustained by sufficient evidence. In this connection it is insisted (1) that the verdict cannot rest on the first and second paragraphs of complaint, which rely on the fact that the water-pipe was too near the rail of

the track, because the evidence discloses that appellee's car left the track before it reached the water-pipe; and (2) that the verdict cannot rest on the paragraphs of complaint which rely exclusively on the defective car, because there is no evidence that appellant knew of the condition of the car before appellee received the injury complained of.

On these questions it is sufficient to say that there is apparent conflict in the evidence. Three witnesses, however, located the water-pipe south of the north wall of the break-through, where appellee's car going north was wrecked. Witness J. J. Cliff said that this pipe went under the track at a point about two or three feet south of the north wall. In answer to a question as to how far south of the north wall of the break-through the water-pipe came, witness Joe Nuckles answered: "From eighteen inches to two feet from the north wall." Witness Major Gardner located the elbow in the pipe from eighteen inches to two feet south of the north side of the break-through.

The derailed car was resting against the north wall of the break-through. Appellee testified that at the time the car left the track it struck something that gave off a metallic sound. Appellee testified that he discovered, after getting on his car and starting down the incline that he had a bad car; that it had a zigzag motion, and pulled to the right some six or seven inches. Other witnesses testified to the condition and character of the car which would cause it to have such zigzag movement.

We think we have indicated enough of the evidence to show that this court cannot say that there was no evidence to sustain the verdict, but, on the contrary, under the well established rules of this court there was enough to prevent a reversal.

Judgment affirmed.