## SULLIVAN v. INDIANAPOLIS, CRAWFORDSVILLE AND WESTERN TRACTION COMPANY.

[No. 8,189. Filed January 16, 1914.]

1. TRIAL.—*Questions for Court and Jury.*—It is for the court to say whether there is any evidence tending to support any material issue of fact, but if there is such evidence, its weight or probative value is for the jury. p. 413.

2. TRIAL.— *Motion for Peremptory Instruction.— Consideration of Evidence.*—In deciding the question presented by a motion for peremptory instructions, only such evidence as is favorable to the party opposed to the motion should be considered, and while a mere scintilla or suggestion of evidence is insufficient to estab-

lish a material and issuable fact, the court should consider any fact or circumstance shown by the evidence which is pertinent to such issue, as well as any inferences which the jury might reasonably draw therefrom, and if the facts and circumstances proven are susceptible to different reasonable inferences, the direction of a verdict is erroneous. p. 413.

3. TRIAL.—*Directing Verdict.*—Where there is a total failure of evidence to prove any fact essential to recovery by plaintiff, it is the duty of the trial court, upon proper motion, to direct a verdict for defendant. p. 414.

4. MASTER AND SERVANT.—*Duties of Master.—Right of Servant to Rely on Performance of Masterial Duty.*—It is the duty of a master, which he cannot delegate so as to avoid liability, to use ordinary care to provide suitable and safe tools, appliances and machinery for his employe, and to make such reasonable inspection thereof from time to time as the nature of the use and the character of the equipment may require to keep the same in a reasonably safe condition for the intended use, and the employe may rely upon the safety of the equipment provided by the master, except as to such dangers and defects as may be ascertained by an ordinarily prudent man in the exercise of ordinary care. p. 414.

5. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.*—An employe assumes the risks ordinarily incident to his employment and is presumed to have knowledge of the defects and dangers that are open and obvious, or which may be known to him by the exercise of ordinary care. p. 414.

6. RAILROADS.—*Electric Railroads.—Duty to Servants.—Safety of Machinery and Appliances.*—The masterial duty to use reasonable care in providing suitable and safe equipment for the servant is applicable to a railway company operating cars by electricity or other motive power, and it is liable for an injury resulting proximately from a failure in that respect arising either from the incompetency of the servants to whom such duty was delegated, or from their failure, if competent, to make such reasonably careful inspection as the law requires of the master in the discharge of such duty. p. 415.

7. MASTER AND SERVANT.—*Injuries to Employe.—Jury Question.*—In a motorman's action against an electric railway company for personal injuries in a collision caused by alleged defects in the braking apparatus of the car under evidence tending to show that prior to the day of the injury the car had been turned in as defective; that defendant's employes charged with repairing cars were incompetent; that on the evening prior to the injury such employes, in the belief that the car needed repairing, worked on it and, discovering no apparent defect, placed it in position for

NOVEMBER TERM, 1913. 409

Sullivan v. Indianapolis, etc., Traction Co.—55 Ind. App. 407.

use; that on the following morning plaintiff was assigned to said car and made a trip to Indianapolis, during which he experienced some difficulty in stopping, which he thought was due to snow and failure of the sand pipes to work properly; that he examined the pipes, removed an obstruction, and found the sand worked properly, and, thinking that such obstruction caused the trouble, made no further examination, and started on the return trip when the collision occurred because of the alleged defects; the questions whether such defects were obvious or ascertainable in the exercise of ordinary care, or whether they were latent and not ascertainable by plaintiff in the exercise of such care, but could have been ascertained by defendant in the exercise of due care, were properly for the jury. pp. 415, 419.

8. MASTER AND SERVANT.—*Injuries to Servant.—Master's Liability. —Effect of Rules.*—The rule of an electric railway company requiring motormen to examine their cars and ascertain their fitness before operating them, cannot change the masterial duty to exercise reasonable care to provide a safe place in which to work and safe and suitable equipment, though it is proper evidence along with other evidence bearing on the question of contributory negligence. pp. 419, 420.

9. MASTER ANL SERVANT.—*Injuries to Servant.—Contributory Negligence.—Violation of Rules.*—It is a servant's duty to obey the master's reasonable rules, and if he violates them, and is injured as a proximate result, he is generally held to be guilty of contributory negligence barring a recovery, though there are exceptions to this rule. p. 420.

10. MASTER AND SERVANT.— *Reasonable Care.— Latent Defects.*— Reasonable care on the part of the master demands inspection and search for latent defects and hidden dangers, while such care on the part·of the servant requires attention, and observation of obvious perils and defects only, unless the nature of his employment is such as to especially enjoin upon him a higher duty. p. 420.

11. MASTER AND SERVANT.—*Injuries to Servant.—Evidence.—Jury Question.*—In a motorman's action for injuries in a collision caused by alleged defects in the braking apparatus of his car, where there was some evidence tending to show defects in the brake shoes and brake rods, and the maladjustment of the brake shoes on the wheels, of a character that might have caused the accident, and showing that the accident was not caused by an absence of sand on the tracks, the question of whether the injury was caused by defective brake shoes and rods, preventing the brakes from checking the car when applied, was properly for the jury. p. 421.

12. MASTER AND SERVANT.—*Injuries to Servant.—Jury Question.*—

*Latent Defects in Appliances.*—In a motorman's action for injuries from a collision of his car, where there was evidence tending to show that none of the devices for stopping the car worked properly, that incompetent workmen were employed to make repairs, that before the accident repairs were made requiring special skill and experience not possessed by the men making them, together with evidence showing that the braking devices failed to work at the time of the collision, a jury might reasonably have inferred that there were latent defects in the electrical and air-brake appliances which caused the collision, and which were not discoverable by an ordinarily prudent man in the exercise of ordinary care, but which defendant might have discovered in the exercise of ordinary care through inspection by competent men. p. 421.

From Superior Court of Tippecanoe County; *Henry H. Vinton,* Judge.

Action by John F. Sullivan against the Indianapolis, Crawfordsville and Western Traction Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Clyde H. Jones, John B. Murphy* and *Allen Boulds,* for appellant.

*Whittington & Williams* and *Haywood & Burnett,* for appellee.

FELT, J.—This is a suit by appellant against appellee for damages for personal injuries alleged to have been caused by the negligence of appellee as the employer of appellant. At the close of the plaintiff's evidence the defendant moved the court for a peremptory instruction directing a verdict in its favor. The motion was sustained and the jury so instructed. Appellant moved for a new trial and the motion was overruled. From the judgment on the verdict of the jury appellant has appealed to this court and assigned as error the ruling on the motion for a new trial. The only specification therein, not waived by failure to present the question in the brief, is that the court erred in instructing the jury to return a verdict for the defendant.

The gist of the complaint is that in 1909, appellee owned and operated an electrical railway, extending from the city

of Crawfordsville to Indianapolis, Indiana; that appellant was employed and worked as a motorman; that as such motorman it was his duty to run the cars designated by appellee; that appellee maintained car barns at the city of Crawfordsville where its cars were repaired and kept in running order by employes other than appellant; that to make the repairs it was necessary for appellee to have a competent mechanic and electrician; that prior to and at the time of appellant's injuries the appellee negligently employed and placed in charge of the repair work, incompetent and inexperienced men who were not skilled as electricians or mechanics; that appellee knew the men were incompetent to make the necessary repairs to the cars and knew it was dangerous and unsafe for its employes to operate its cars when not in proper running order; that appellant did not know the employes were incompetent; that on the evening of December 3, 1908, car No. 103 was placed in the car barn in a defective condition, in this, that the air brakes were so defective and improperly adjusted that they would not work properly and did not enable the motorman to have complete control of the car; that the brake cylinder on the air brake was not of sufficient size to properly control the car; that the electrical mechanism of the car was out of repair, so that the same could not be properly controlled and operated; that the electrical mechanism of the car was old, worn and out of repair to such an extent that the motorman in charge of the car could not reverse the same, which defects could have been ascertained and remedied by a competent electrician; that on December 3, 1908, appellee was notified of the defective condition of the car aforesaid; that appellee carelessly and negligently failed to repair the car or remedy the defects; that appellant had no notice of the defects or knowledge of the same; that appellant was not a skilled mechanic or electrician and could not ascertain the defects; that the defects were not open and apparent to one unskilled in mechanics and electrical appli-

ances; that on the morning of December 4, 1908, appellee carelessly and negligently ordered appellant to operate the car as a motorman, without giving him any notice of the defective condition of the same as aforesaid; that in pursuance of the order aforesaid, he ran the car to Indianapolis and started to return to Crawfordsville; that he was ordered by appellee to meet and pass one of its east bound cars at Rank substation, or siding No. 2; that while approaching the siding and while more than 1,200 feet therefrom, appellant tried to stop the car by cutting off the electrical current and applying the air to the brakes, and then by using the reverse, but on account of the defective condition of the brakes and of the machinery connected therewith, the brakes failed to check the speed or stop the car and it collided with great force with the east bound car; that appellant could have stopped the car but for the defects aforesaid; that when this car collided, appellant was struck, crushed, and severely injured; that all of his injuries were caused by and were the direct and approximate result of appellee's negligence aforesaid.

Appellant claims there is evidence tending to support the material averments of his complaint. Appellee insists that there is no evidence that the car was defective in any of the particulars alleged when the appellant took charge of it on the morning of the day he was injured; that he ran the car from Crawfordsville to Indianapolis and was on the return trip when the accident happened; that he had run the car about fifty-two miles and made about twenty-five stops before the collision occurred; that the brakes worked properly up to the time of the accident and no other defects were apparent; that appellant had a better opportunity than appellee to learn of any defects in the car or its running mechanism; that the undisputed physical facts show that appellee could not by exercising ordinary care have discovered the defects that caused the accident, and that the appellant, on the facts of the case, must be held to have had

knowledge of all that could have been ascertained about the condition of the car by the exercise of the care required by the law and to have assumed the risks that resulted in his injury.

The complaint charges several independent acts of negligence against appellee: (1) employing incompetent and unskilled men to make repairs and keep the cars in running order; (2) that car 103 was defective, and out of repair in at least three respects, viz., (a) air brake out of repair and defective, (b) brakes not properly adjusted, (c) electrical mechanism defective, old, worn, and out of repair.

If there is evidence tending to prove that appellant was injured substantially as alleged; that car 103 was out of repair and defective in one or more of the ways alleged; that some one or more of the defects were the proximate cause of his injury and such cause was not known to appellant and could not have been known to him by the exercise of ordinary care in the discharge of his duties as motorman, then the question of appellee's liability should have been submitted to the jury and it was error for the court to peremptorily instruct the jury to return a verdict for

1. the defendant. It is for the court to say whether there is any evidence tending to support any material issue or fact, but if there is such evidence, its weight or probative value is for the jury, and not for the court. Where there is any conflict in the evidence, for the purpose

2. of deciding the question, presented by a motion for a peremptory instruction, the evidence favorable to the party making the motion is deemed withdrawn, and the court will consider only the evidence, if any, favorable to the opposite party. While a mere scintilla, or suggestion of evidence, is insufficient to establish a material and issuable fact, yet proof of such fact need not be made by any particular kind or class of evidence. In determining whether there is any evidence tending to prove such fact, it is the duty of the court to consider any fact or circumstance shown by

the evidence which is pertinent to such issue, and to consider any inferences the jury might reasonably draw from such facts and circumstances. If the facts and circumstances proven by the evidence are of such a character that reasonable minds may draw different inferences therefrom, it is the duty of the court to submit the question to the jury, and in that event, it is error for the court to direct a ver-

3. dict. If when so considered there is a total failure of evidence to prove any fact essential to the plaintiff's right of recovery, then it is the duty of the trial court upon proper motion, to direct a verdict for the defendant. *Plaskett* v. *Benton Warren, etc., Soc.* (1910), 45 Ind. App. 358, 360, 89 N. E. 968, 90 N. E. 908; *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 537, 87 N. E. 723; *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 701, 88 N. E. 612; *Indiana Union Traction Co.* v. *Keiter* (1911), 175 Ind. 268, 276, 92 N. E. 982; *Gipe* v. *Pittsburgh, etc., R. Co.* (1908), 41 Ind. App. 156, 161, 82 N. E. 471; *Columbian Enameling, etc., Co.* v. *Burke* (1906), 37 Ind. App. 518, 525, 77 N. E. 409, 117 Am. St. 337; *Sheerer* v. *Chicago, etc., R. Co.* (1895), 12 Ind. App. 157, 39 N. E. 756.

It is the duty of the master to use ordinary care to provide suitable and safe tools, appliances and machinery to be used by his employe in discharging the duties of his

4. employment, and the master cannot relieve himself of the responsibility of such duty by delegating its performance to an agent or servant. The employe as-

5. sumes the risks ordinarily incident to his employment and is presumed to have knowledge of defects and dangers that are open and obvious, or which may be known by the exercise of ordinary care for his own safety. If he is injured by reason of any such risk or danger that may be so ascertained, the master is not liable.

The servant is not bound to look for hidden or latent defects and dangers or for those requiring special skill for their detection, which he does not possess. He may rely

upon the safety of the implements, machinery, and appliances provided by the master for his use in rendering the services contemplated by his employment, unless the defects and dangers are such as may be ascertained by an ordinarily prudent man in the exercise of ordinary care for his own safety. An employer is required not only to exercise ordinary care to provide reasonably safe and suitable tools, machinery, and appliances for the use of the servant in the first instance, but to make such reasonable inspection thereof from time to time as the nature of the use and character of the machinery or appliances may require to keep them in reasonably safe condition for their intended use. *Merica* v. *Fort Wayne, etc., Traction Co.* (1912), 49 Ind. App. 288, 294, 97 N. E. 192; *Columbian Enameling, etc., Co.* v. *Burke, supra,* 522; *Chicago, etc., R. Co.* v. *Wilfong* (1910), 173 Ind. 308, 311, 90 N. E. 307; *Kentucky, etc., R. Co.* v. *Moran* (1907), 169 Ind. 18, 21, 80 N. E. 536; *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181, 187.

The rule requiring the master to exercise reasonable care in providing suitable and safe equipment, machinery and appliances is applicable to a railway company operating cars by electricity or other motive power. If it fails to discharge this duty and such failure is the proximate cause of the injury for which a recovery is sought, a liability arises whether such failure is due to the incompetency of the servants to whom such duty has been delegated, or to the failure of such servants, though competent, to make such reasonably careful inspection as the law requires of the master in the discharge of this duty. *Chicago, etc., R. Co.* v. *Ward* (1897), 147 Ind. 256, 259, 263, 45 N. E. 325, 46 N. E. 462; *Indiana Car Co.* v. *Parker, supra.*

There is evidence in this case tending to prove that appellant left Crawfordsville about six a. m. on December 4, 1908, and arrived at Indianapolis at 7:50 a. m., about on time; that he made no special examination of the car before starting; that it was a damp, snowy morn-

ing; that on two occasions on the run to Indianapolis the car ran ten or twelve feet beyond the place where it should have stopped; that while at Indianapolis, Sullivan examined the sand pipes and took a hammer and knocked ice out of one of them; that he and the conductor then made a test and found that the sand worked properly; that they left Indianapolis at eight a. m. on special order and reached Rank's station, or siding No. 2, about seven miles from Indianapolis, at about 8:29 a. m. where they were to pass car No. 106; that as they approached the switch, they were running about twenty or twenty-five miles an hour, and before they reached the circuit breaker, about 850 feet from the switch, Sullivan threw back the overhead switch that throws off the current from the controller; that he then used his air lever, but the brakes did not take hold; that he then threw on the "emergency" and it did no good and he then pulled the reverse lever around; that the speed of the car was not checked by such efforts and it ran right on and collided with car No. 106 and Sullivan was pinioned under parts of the car and severely injured; that both cars were carried 735 feet by the impact; that there was sand along the rails where car No. 103 ran just before the collision; that car No. 103 was run by Austin Todd, as motorman, on the afternoon of December 2 or 3, 1908, and the brake rod on the car broke; that there was no braking power after that but successful stops were thereafter made by using the reverse lever; that when he tried to stop and used the air brake, it refused to take hold at all; that the motormen were told at the barns what cars to take out; that the men employed by the appellee to make repairs and keep cars in running order were not electricians or mechanics, and were inexperienced and incompetent; that car No. 103 was in a collision in November, 1908, and the front end was mashed in and damaged and the car had to be pulled to the barns by another car; that it was repaired and brace rods put through it to hold it together; that repairs were also made on it a

few days before Sullivan's injury, by wiring connecting air pipes with the air brake, putting on a pilot, repairing the controller, adjusting the brakes, taking up piston travel by use of a turnbuckle, and fastening a broken lug on the controller; that the bolts were wearing holes through the brake rigging; that previously the turnbuckle rods had been cut shorter and old and thinner shoes had been put on the car than those in use when the rods were cut; that the turnbuckle rods were too short when the thin shoes were on and the brakes had less power by reason thereof.

There was also evidence tending to show that some time before Sullivan's injury appellee had in his employ a Mr. Applegate, as master mechanic, who was competent to make repairs and keep the cars in running order, but he had not been with the company for some time and the men who were doing such work at the time and for some weeks prior to Sullivan's injury were inexperienced and incompetent to do some parts of the work necessary to keep the cars in running order; that it requires skill and experience to properly repair air brakes and electrical appliances; that the piston travel in the cylinder of car No. 103 was too great and did not give braking power; that the brake shoes on the car on December 4, 1908, were about half worn out and were hung too low on the wheels.

Appellant and other witnesses testified as above indicated and appellant also testified that the foreman designated car No. 103 for him to run on December 4, 1908; that he started out at about 5 :45 a. m. and it was dark; that he had plenty of air pressure; that he was about 775 feet from the switch point when he first applied the brakes and about 700 feet from it when he applied the "emergency" and about 600 feet away when he threw it into the "reverse"; that at the rate of speed he was going he could have stopped in 300 feet if the brakes had worked right; that he did not attempt to reverse his car going to Indianapolis and there was no

occasion requiring him to do so; that the only place he looked for the cause of the trouble when at Indianapolis, was at the apparatus for supplying sand; that when he found the pipe clogged he thought that it was the cause of the trouble; that rule 223 of the company provides that "a motorman must examine his car and see that it is fully equipped and in good condition for safe operation. They must make further examination while waiting on the siding and during lay overs at the Terminal Station."

Daniel G. Offutt testified that he was employed by appellee at the time of Sullivan's injury; that he ran car No. 103 the day before Sullivan was injured, as conductor, and turned it in at 10:50 p. m.; that the car was not braking properly but he did not know what was the matter with it; that it would sometimes run 100 to 300 feet in making a stop; that he made a report to the company that night in writing, hung the card on a nail provided for that purpose and wrote on it, "car in bad order" and has not seen the card since.

Mitchell Matreu testified that he was on duty at the car barns on the night of December 3, 1908, and Bruce Delano was with him; that he directed Sullivan to take car No. 103 out on the morning of December 4; that on the night of December 3, he and Delano went over car No. 103 and examined it; that either he or Delano examined and tested the brakes; that they examined the controller and overhead, tested the air brakes and found no defect in either the braking system or other apparatus of the car; that he ran car No. 103 backwards and forwards and switched it from the shop to the car barns and placed it in position for Sullivan the night before he took it out on December 4 and noticed nothing wrong with the reverse or the brakes; that he paid no particular attention to the brakes on car No. 103 on the night of December 3 and made no tests other than starting and stopping the car and did not run it at a speed more than three miles an hour.

It is apparent from the evidence that the employes of appellee charged with the duty of making repairs, knew or believed that car No. 103 needed repairing on the evening of December 3, 1908; that it was taken to the repair shops, worked on and returned to the barns and set into position for use on the morning of the 4th; that appellant was directed to run the car and did so in obedience to the order duly given him. These facts eliminate any question relating to notice of defects and time within which to make repairs, for appellee undertook to make needed repairs and designated the car as ready to be operated by appellant after such repairs as it deemed necessary had been made. Appellant made no particular examination of the car until he reached Indianapolis where he examined the sand pipes, found an obstruction, removed it, made a test and found that the sand worked properly. Appellant ran the car in obedience to appellee's order and he made some effort to ascertain and remedy the defects that were interfering with the operation of the car. It was a damp, snowy morning and the only difficulty on the run to Indianapolis was the failure of the car to stop promptly. We cannot say that it was unreasonable for appellant to believe that the obstruction in the sand pipes which he removed was the cause of the only difficulty he encountered in running the car to Indianapolis, nor can we say as a matter of law that in starting to make the return run under such circumstances, he was guilty of contributory negligence or that he assumed the risk that resulted

8. in his injury. The rule of the company requiring motormen to examine their cars and ascertain their fitness before operating them cannot modify or change the duty of the master enjoined by the law, of exercising reasonable care to provide a safe place in which to work and safe and suitable tools, implements and machinery to be used by the employe in discharging the duties of his employ-

7. ment. In *Vandalia Coal Co.* v. *Price* (1912), 178 Ind., 546, 97 N. E. 429, the Supreme Court by Morris, C. J.,

420   APPELLATE COURT OF INDIANA,

Sullivan v. Indianapolis, etc., Traction Co.—55 Ind. App. 407.

said: "Assumption of risk, as a defense against actionable negligence depends wholly on the servant's knowledge, actual or constructive, of the existence of danger, and, in the absence of either actual or constructive knowledge there is no assumption." The question as to whether the facts, if any, which caused appellant's injury, were open and obvious, or could have been ascertained by him in the exercise of ordinary care for his own safety, and the further question as to whether there were hidden or latent defects which caused appellant's injury and which were not known to him and could not have been ascertained by him by the use of the care of an ordinarily prudent man, but which could have been ascertained by appellee by the exercise of the care enjoined upon it by the law, on the facts of this case, were all questions to be determined by the jury from the evidence. *National Fire, etc., Co.* v. *Smith* (1913), *ante* 124, 99 N. E. 829; *City of Fort Wayne* v. *Christie* (1901), 156 Ind. 172, 176, 59 N. E. 395.

9. It is the duty of an employe to obey the reasonable rules of his employer and if he violates them and is injured as a proximate result of such violation, generally, he is held to be guilty of contributory negligence which will bar a recovery, though under certain conditions there are exceptions to this general rule. *Chicago, etc., R. Co.* v. *Hamerick* (1912), 50 Ind. App. 425, 441, 96 N. E. 649, and cases cited. 8. The rule of the company referred to in this case could in no event be made to mean that appellant was bound to look for latent and hidden dangers. It was proper evidence to be considered along with any other evidence bearing on the appellant's care, or the question of contributory negligence. 10. Reasonable care on the part of the master, demands inspection and search for latent defects and hidden dangers, while reasonable care on the part of the servant requires attention and observation of open and obvious defects and perils only, unless the nature of his employment is such

as to especially enjoin upon him a higher duty. *Columbian Enameling, etc., Co.* v. *Burke, supra; Osborn* v. *Adams Brick Co.* (1913), 52 Ind. App. 175, 99 N. E. 530, 100 N. E. 472.

Appellee contends that there is no evidence tending to prove that any of the alleged defects existed when appellant began operating the car on the morning of December 4, or that there were any defects which could have been discovered by any inspection required of appellee. There is some evidence, however, tending to show defects in the brake shoes, and brake rods, and the maladjustment of the brake shoes on the wheels, of a character that might have caused the accident. The thin shoes and short rods were on the car the day before and the day of the accident. The evidence tends to show that this lessened the efficiency of the brakes and that there was more or less trouble in stopping the car on both of said days. The proof also tends to show that sand was found along the track where the car ran just before the collision, which would indicate that the cause of the accident was not due to an absence of sand on the track. The jury would have a right to draw from these facts the inference that the thin shoes and short brake rods, and maladjustment of the brake shoes on the wheels, prevented the brakes from checking the speed of the car and caused the collision. *Indiana Union Traction Co.* v. *Abrams* (1913), 180 Ind. 54, 101 N. E. 1. Whether the accident was or was not caused by such conditions was a question that should have been determined by the jury from the evidence under proper instruction by the court.

The evidence also tends to show that none of the devices intended to stop the car worked properly on the occasion of the accident and that incompetent workmen were employed to make repairs; that numerous repairs had been made on the car shortly before the accident, some of which were of a kind requiring special skill and experience not possessed by the men who undertook to make them. In

422 APPELLATE COURT OF INDIANA,

Sullivan *v.* Indianapolis, etc., Traction Co.—55 Ind. App. 407.

view of this evidence and the evidence of the failure of the braking devices to work, the jury might reasonably have inferred that there were latent defects in the electrical and air brake appliances, not discoverable by an ordinarily prudent man in the exercise of ordinary care, but which might have been discovered by appellee in the exercise of ordinary care through inspection made by men reasonably competent to do such work, and that the collision was caused by such latent defects which might have been so discovered. *Indiana Union Traction Co.* v. *Abrams, supra.*

For the reasons already announced we hold that the court erred in directing a verdict for the defendant. The judgment is therefore reversed with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 103 N. E. 860. As to liability of employer for defective machinery and appliances, see 98 Am. St. 289; 97 Am. St. 884. As to the servant's assumption of obvious risks of hazardous employment, see 1 L. R. A. (N. S.) 272. As to servant's assumption of risk of danger imperfectly appreciated, see 4 L. R. A. (N. S.) 990. On the assumption of risk of dangers created by master's negligence, which might have been discovered by the exercise of ordinary care on the part of the servant, see 28 L. R. A. (N. S.) 1250. For servant's assumption of risk from latent danger or defect, see 17 L. R. A. (N. S.) 76. As to servant's right of action for injuries received in obeying direct command accompanied by assurance of safety, see 30 L. R. A. (N. S.) 453. As to whether servant's disobedience of master's rules amounts to contributory negligence, see 24 L. R. A. 657. On the duty of the servant in regard to the rules promulgated by his employer, see 43 L. R. A. 350. For contributory negligence of employe in obeying direct command, see 30 L. R. A. (N. S.) 441. As to the disobedience of the rules or regulations of a master as affecting the right of a servant to recover for personal injuries, see 8 Ann. Cas. 3; 10 Ann. Cas. 152; Ann. Cas. 1912 A 84. See, also, under (1) 38 Cyc. 1514, 1516; (2) 38 Cyc. 1565, 1567; (3) 38 Cyc. 1576; (4) 26 Cyc. 1097, 1136, 1182; (5) 26 Cyc. 1177, 1213; (6) 26 Cyc. 1104, 1121; (7) 26 Cyc. 1463, 1478; (8) 26 Cyc. 1162, 1440; (9) 26 Cyc. 1267; (10) 26 Cyc. 1139, 1251; (11) 26 Cyc. 1460; (12) 26 Cyc. 1450.