# Henry, Receiver, *v.* Prendergast, Administratrix.

[No. 7,222. Filed May 12, 1911. Rehearing denied October 13, 1911. Transfer denied June 25, 1912.]

1. Railroads.— *Interurban.— Receivers.— Powers.—Improvements.* —Where the receiver of an interurban railroad was authorized by the order appointing him to operate the lines of railroad and keep the cars daily running thereon, and to do whatever was necessary or proper to keep the cars running and to keep the road in operation, he had authority to contract for the alteration and repair of a pit in a car barn. p. 49.

2. Railroads.—*Interurban.—Action Against Reciever.—Authority of Receiver.—Complaint.—*In an action against the receiver of an interurban railroad to recover for the death of a person engaged in making repairs to a pit in a car barn, the allegation of

the complaint that the receiver was ordered to do whatever was necessary and proper to keep the road in operation and the cars running, was a sufficient allegation of the authority of the receiver to have such repairs made without averring his specific authority so to do. p. 50.

3. MASTER AND SERVANT.—*Injury to Servant.*—*Knowledge of Danger.*—*Uninsulated Wire.*—*Complaint.*—*Sufficiency.*—In an action for the death of a servant by contact with an uninsulated electric wire, where the only negligence charged was in maintaining the uninsulated wire in a pit which decedent had been engaged to repair, the averment of the complaint that decedent "had no notice or knowledge that such wire was uninsulated" was a sufficient allegation of the decedent's want of knowledge without alleging that he had no notice that the pit was dangerous. p. 51.

4. MASTER AND SERVANT.—*Injury to Servant.*—*Uninsulated Wire.* —*Patent Defects.*—*Complaint.*—In an action for the death of one engaged in repairing a pit in a car barn by coming in contact with an uninsulated electric wire, the allegation of the complaint that defendant caused such wire to be strung in the pit and that at a certain point the same was wholly uninsulated for a distance of two inches, does not render the complaint objectionable as alleging a patent defect, since, when taken with other allegations describing the place where decedent was required to work and the location of the wire in the pit, it is sufficiently shown that the defect was not such as could be discovered by the use of ordinary care. p. 51.

5. MASTER AND SERVANT.—*Injury to Servant.*—*Latent Defects.*— *Knowledge.*—*Complaint.*—Where facts alleged, in an action for injury to a servant, all tend to show that the theory of the complaint is that the defect was latent, it is sufficient to allege that the servant did not know of such defect or danger. p. 52.

6. APPEAL.— *Review.*— *Instructions.*— *Conformity to Evidence.*— Where instructions given in an action for the death of a servant correctly stated the law on the theory that the defect complained of was latent, and there was evidence to support such theory, the giving of such instructions was not error. p. 52.

7. DEATH.—*Negligent Death.*—*Measure of Damages.*—*Instructions.* —In an action for the negligent death of a person, brought for the benefit of surviving sisters, instructions that the jury might consider the pecuniary value of any labor performed by decedent in raising crops the proceeds of which were used with decedent's consent in the support of such sisters, if a continuance of such labor, applied to such uses, might be expected by reason of the relationship of the parties, and also informing the jury that pecuniary injury may be caused by loss of services, on which the parties themselves never fixed any stipulated value, and for

services rendered where there was no legal obligation to render them, were correct. p. 53.

8. MASTER AND SERVANT.—*Injury to Servant.*—*Safety of Place to Work.*—*Master's Duty.*—*Degree of Care.*—A master is not bound to use the highest degree of care to provide a safe place in which his servant is to work, and his duty is fulfilled when he uses ordinary care, proportionate to the danger, to provide a reasonably safe place and to keep the same in reasonably safe condition. p. 54.

9. APPEAL.—*Review.*—*Instructions.*—Where the issue largely controlling the determination of an action for the death of a servant involved the quantum of care which defendant should have used, instructions erroneously stating the degree of care required were not harmless. p. 54.

From Shelby Circuit Court; *Will M. Sparks,* Judge.

Action by Catherine Prendergast as administratrix of the estate of Leo Prendergast, deceased, against Charles L. Henry, receiver of the Indianapolis and Cincinnati Traction Company and others. From a judgment for plaintiff, the defendant receiver appeals. *Reversed.*

*Hord & Adams* and *Smith, Cambern & Smith,* for appellant.

*Douglas Morris,* for appellee.

IBACH, J.—Action by appellee as administratrix of the estate of Leo Prendergast against appellant, as receiver of the Indianapolis and Cincinnati Traction Company, Philip Wilk and William Redman, for damages for the negligent killing of Leo Prendergast, by reason of his receiving an electric shock while working in the car barn of said company at Shelbyville. The action was first brought in the Rush Circuit Court and the venue was changed to the Shelby Circuit Court. Issues were formed by a complaint in one paragraph to which a demurrer was overruled, and an answer in general denial filed. The jury returned a verdict in favor of appellee against appellant Henry, as receiver, for $1,500, and in favor of defendants Wilk and Redman. Over a motion for a new trial, judgment was rendered on the verdict.

Appellant relies for reversal on alleged errors of the court (1) in overruling his demurrer to the complaint for want of sufficient facts; (2) in refusing to sustain his motion to instruct the jury to find for appellant; (3) in overruling his motion for a new trial.

The substantial averments of the complaint are that on December 8, 1908, Catherine Prendergast was appointed administratrix of the estate of Leo Prendergast; that the Indianapolis and Cincinnati Traction Company is a corporation owning an electric railroad running from Indianapolis to Rushville, Indiana, operated by electricity generated at its power-house at Rushville; that previous to July 1, 1905, the Indianapolis and Southeastern Traction Company owned and operated an electric railroad from Indianapolis to Shelbyville, Indiana, that at Shelbyville said company owned a car barn, connected by tracks with its railroad, and into which it ran its cars for cleaning and repairing; that between the rails of said tracks was constructed a pit, five feet deep, four feet wide and thirty feet long, into which pit workmen entered for the purpose of repairing and cleaning the cars when such cars were run on the tracks above said pit; that on July 5, 1905, said Indianapolis and Cincinnati Traction Company leased said railroad from the Indianapolis and Southeastern Traction Company, together with said car barn and appliances, for 999 years, with full power to make any repairs or alterations it might see fit to make, and from that day said Indianapolis and Cincinnati Traction Company operated both of said railroads by electricity generated at its power-house at Rushville; that in July, 1906, defendant Charles L. Henry was appointed receiver of said Indianapolis and Cincinnati Traction Company by the Superior Court of Marion County, Indiana, and was ordered to operate both said Rushville and Shelbyville lines of railroad, and to *keep said cars running thereon;* that on November 1, 1906, said Henry, as receiver, decided to alter and

repair said pit at said barn at Shelbyville, by deepening it and constructing a cement floor on the bottom thereof, so as to enable the employes better to clean and repair the cars, and, because said pit was dark, he caused electric light wires to be strung along one side and near the top of said pit, and to which were attached incandescent bulbs for lighting said pit; that said wires were connected with other wires by which electricity was conveyed from said Rushville power-house, and liable at any time to come in contact therewith, were wires carrying a high voltage of electricity—33,000 volts; that it was the duty of said Henry to place in said pit only wires that were well insulated; that said Henry in placing a wire in said pit carelessly and negligently caused such wire to be strung therein which at a point thereof for a distance of two inches along said wire was wholly uninsulated; that it was the duty of said receiver to inspect frequently said wires in said pit, and see that they were properly insulated, but said defendant negligently and carelessly failed to inspect said wires, and that a careful inspection thereof would have revealed said uninsulated portion of said wire, and it could have been immediately insulated; that on November 15, 1906, said Henry, as receiver, employed defendants Philip Wilk and William Redman to deepen and cement the bottom of said pit, and authorized them to employ laborers to work in said place, and afterwards, on November 27, 1906, said Wilk and Redman employed plaintiff's decedent to dig said pit deeper, and cement the bottom thereof, and pursuant to said employment, plaintiff's decedent commenced work in said pit on Wednesday, November 28, 1906, at 10 o'clock a. m.

Plaintiff further says that before placing decedent in said pit to work, it was the duty of said Wilk and Redman, and said Henry, as receiver, to inspect said wires, and see that they were properly insulated, but that each of them failed to do so, and as a result thereof, when said decedent com-

menced said work, said portion of said wire in said pit was uninsulated and in the condition it was when first placed as aforesaid; that it was the duty of said defendants to furnish decedent a safe place in which to work, but that defendants negligently failed to do so, and the place where decedent was employed to work was dangerous by reason of said un-insulated portion of wire and the probability of a fatal result to any one touching said uninsulated portion of wire, when the same was charged with electricity; that the top of said pit was covered with boards, and the pit was lighted by an electric light attached to said partially uninsulated wire; that decedent was taller than the depth of said pit, and in working therein he was compelled to stoop; that the pit was dimly lighted; that decedent commenced to work therein by digging up the bottom of said pit; that he continued at said work till the time of his death, about one hour after he commenced work; that by reason of the stooping position in which he was compelled to work, his cap dropped down over his eyes, and he thereupon raised his left hand to straighten his cap, and in doing so his hand came in contact with said electric wire at the point where the same was not insulated, and by reason of said contact decedent received an electric shock which caused his death; that at said time said decedent had no notice or knowledge that said wire was uninsulated; that at the time of said contact said wire was charged with electricity at a pressure of 600 volts; that decedent's death was proximately caused by the negligence of defendants, aforesaid, and without any negligence on decedent's part contributing thereto, and by reason thereof plaintiff is entitled to recover damages in the sum of $10,000; that decedent was twenty-four years of age, without ancestors or descendants, and he left as his next of kin certain brothers and sisters (naming them); that each of said sisters except one was wholly dependent on him for support; that this action is brought for the benefit of said next of

kin; that before bringing this suit, plaintiff obtained leave so to do from the Superior Court of Marion County, where said receivership is pending.

Appellant claims that the complaint is insufficient, because it does not allege that the contract for the work done by Wilk and Redman was authorized by the court appointing the receiver, nor that the receiver had authority to alter and repair the pit in the car barn where deceased was killed, nor that the receiver had authority from the court to authorize said Wilk and Redman to employ laborers to work in said place.

The complaint alleges that "by the terms of the order of appointment of said court, the receiver was ordered to operate the lines of railroad, and keep the cars daily running thereon, and to do whatever was necessary or proper to keep said cars running and to keep said road in operation."

The receiver had the authority, under such general order made in said receivership to contract for the work done by Wilk and Redman, to alter and repair the pit in the car barn where decedent was killed, and to authorize said Wilk and Redman to employ laborers to work in said place. *Vanderbilt* v. *Central R. Co.* (1887), 43 N. J. Eq. 669, 12 Atl. 188; *Palys* v. *Jewett* (1880), 32 N. J. Eq. 302; *Little* v. *Dusenberry* (1884), 46 N. J. L. 614, 50 Am. Rep. 445; *Cowdrey* v. *Galveston R. Co.* (1870), 1 Woods (U. S.) 331, Fed. Cas. No. 3,293; *Taylor* v. *Canaday* (1901), 155 Ind. 671, 57 N. E. 524, 59 N. E. 20.

A statement of the law which is highly applicable to the present case is found in *Vanderbilt* v. *Central R. Co. supra,* where the court, by Magie, J., said: "Doubtless the chancellor has power to retain in his hands the administration of such a trust, and to personally direct and order each contract into which the receiver should enter. But it would obvi-

ously be impracticable to adopt such a course in running a railroad. To select and employ the necessary subordinates, to fix the term of service and the amount of wages, contract for and purchase materials and supplies, and to anticipate in these respects the future needs of one of these gigantic corporations by express orders in each case, would require the whole time of the chancellor, and could never have been intended by this legislation. It must have been contemplated that in the performance of these multifarious duties some degree of discretion might be accorded to the receiver. Whether a power to exercise such discretion would not be assumed to exist in every case without a special order, need not be considered, for it is clear that the chancellor may accord such discretionary power to a receiver by a general order—such as was made in this cause. When a receiver has thus acquired discretionary powers to operate an insolvent railroad, his position is peculiar, and the contracts he makes for that purpose are *sui generis.* Such a receiver is not exempt from liability to answer for injuries inflicted by the wrong doing or negligence of those he employs in operating the railroad." Citing *Palys* v. *Jewett, supra,* and *Little* v. *Dusenberry, supra.*

It is not necessary to aver in the complaint that the receiver had specific authority to make repairs. The allegation that the receiver was ordered to do whatever was

2. "necessary and proper" to keep the road in operation and the cars running, alleges authority to alter and repair the pit in the car barn, where repairs were to be made on the cars to keep them in service, and such power is included within the general order made by the court before whom the receivership matter was pending. The complaint in this respect is sufficient.

Appellant also contends that the allegation in the complaint, that decedent "had no notice or knowledge that such wire was uninsulated", is insufficient, and claims that

the complaint should also allege that decedent had no
3. notice that the pit was a dangerous place, as he might
have known that the place was dangerous, without
knowing of the exact cause of the danger. The cases cited
by appellant are to the effect that if the complaint had al-
leged generally that decedent was unaware of the danger-
ous character of the place where he worked, and had failed
to allege specifically that he was unaware of the defect
which was claimed to have caused his death, it would not
have been sufficient. These authorities, however, do not hold
that a complaint which alleges want of knowledge of the
specific defect complained of as constituting negligence must
also allege want of knowledge of the danger caused by this
defect. In the present case, the allegation of the dangerous
character of the pit where decedent was working is that such
place was dangerous "by reason of said uninsulated portion
of wire", which is the only negligence charged against de-
fendant. The complaint definitely avers that decedent had
no knowledge or notice that such wire was uninsulated, avers
that his death was caused by such defect, and therefore suf-
ficiently alleges want of knowledge of the only danger which
is charged in the complaint.

Appellant's third objection to the complaint is to the
clause alleging that appellant "caused such wire to be
strung therein [in the pit where decedent was put to
4. work] which at a point thereof for a distance of two
inches along said wire was wholly uninsulated." Ap-
pellant claims that this is an allegation of a patent and not
of a latent defect, of one open and obvious, which decedent
was bound to see and observe.

It is averred that decedent was a laborer put to work to
deepen the pit in the car barns; that the pit was dimly
lighted; that over the top thereof boards had been placed;
that the light wire was at the extreme top of the pit; that
decedent could not stand erect, but was compelled to stoop

while working therein. This description in the complaint of the work which decedent was directed to do, and of the place where he was at work when he was killed, is such as to indicate that the defect mentioned was not such as could be discovered by the use of ordinary care, but only by a careful examination and inspection.

The facts alleged all tend to show that the theory of the complaint is that the defect was latent, and in such cases it is sufficient to allege that decedent did not know of 5. such defect or danger. Such allegations are found in the complaint before us as repel not only actual knowledge, but implied knowledge as well. The averments show a duty owing to decedent by appellant, and a breach of that duty resulting in his death. Facts are also averred negativing knowledge on his part of the defective condition of the wire, and that such defect was a latent one; therefore the complaint is sufficient to withstand demurrer. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 53 N. E. 235; *Evansville, etc., R. Co.* v. *Duel* (1893), 134 Ind. 156, 161, 33 N. E. 355.

Among the reasons for a new trial, appellant assigns error in the giving of instructions 12, 13, 14, 16, 19, 21 and 22. These instructions we have examined carefully, and 6. find that they state the law correctly, on the theory that the defect complained of was a latent one. There was abundant evidence to support such theory, and tending to prove the following facts: that the pit was dark and dimly lighted; that there were car-tracks above the pit, and that boards were laid between these tracks; that when decedent was killed there was a car standing over the pit; that the pit was not deep enough to permit decedent to stand erect, but that it was necessary for him to stoop while working in the pit, and that his line of vision at the time and place of the injury was on the ground; that the wire which was uninsulated was strung along the top of the pit, right up against

the wall; that there was a part of the end of a wire which stuck out, and had no insulation on it, and a few inches distant on the same wire was an uninsulated place about half an inch long. In the light of evidence such as this, we could not be warranted in considering the existence of the uninsulated spot on the wire as a patent defect, discoverable by the exercise of ordinary care. There was evidence supporting the theory on which these instructions were given, and the giving of them was not 'error.

Instructions twenty-eight and twenty-nine are objected to. These instructions follow: (28) "If you find for the plaintiff and that plaintiff is entitled to damages, in assessing the same, you may take into consideration the labor performed by decedent, if any, in raising crops, the proceeds of the sale of which, if any, were used with decedent's consent in the support of any one or more of his sisters in whose behalf this action is brought. And if you find such labor was performed, and the proceeds thereof so applied, and that a continuance of such labor, applied to such uses, might be expected by reason of the relationship of the parties, then you may in assessing damages, consider the pecuniary value of. such labor which was received by such sister or sisters."

(29.) "If you find that plaintiff's decedent and one or more of his sisters in whose behalf this action was brought lived together as members of one family, and said decedent and said sisters or sister rendered services to one another of value, without any contract or stipulation for wages on either side; and if you further find that said decedent never furnished any money to any one of his said sisters, such facts alone would not preclude a recovery by plaintiff. Pecuniary injury may be caused by loss of services, on which the parties themselves never fixed any stipulated value, and for services rendered where there was no legal obligation to render them."

Said instructions are a correct statement of the measure of damages as applicable to the circumstances of the case. There may be a right to recover for services when there is no legal obligation to render them, and this right is correctly stated in the instructions. *Smith* v. *Michigan Cent. R. Co.* (1905), 35 Ind. App. 188, 201, 73 N. E. 928.

Error is also assigned in the giving of instruction eleven, in which the jury was told that appellant was "bound to use every protection which is reasonably accessible and to use the utmost care to keep its wires so protected and insulated as to be safe for workmen whose duties require them to be in their vicinity," and in the giving of instruction fifteen, in which it was told that one furnishing electricity for lighting purposes "is not an insurer against injury to persons whose duties require them to be near the wires, but he must exercise the highest care to prevent such injury."

These instructions were erroneous. There are numerous statements to be found in the books, to the effect that where the record affirmatively shows that the jury was not misled by an erroneous instruction it will be deemed harmless. But the question as to whether the jury was influenced by an erroneous instruction depends on the facts peculiar to each case. An issue largely controlling the determination of the case at bar involved the *quantum* of care which the employer had exercised to furnish decedent a safe place in which to work. By the instructions now being considered, the court informed the jury that appellant was bound to use the highest, the utmost care to furnish to decedent a safe place in which to work. This is carrying the rule farther than is approved by the Supreme Court of Indiana. In this State a master is not bound to use the highest degree of care to provide a safe place in which his servant is to work, and his duty is fulfilled when he uses ordinary care to provide a reasonably

MAY TERM, 1912.                                    55

Outcault Advertising Co. v. Harry Joseph, etc., Co.—51 Ind. App. 55.

safe place, and exercises ordinary care to keep the same in reasonably safe condition. *Haskell & Barker Car Co.* v. *Przezdziankowski* (1908), 170 Ind. 1, 83 N. E. 623, 14 L. R. A. (N. S.) 972, 127 Am. St. 352; *Grand Trunk, etc., R. Co.* v. *Melrose* (1906), 166 Ind. 658, 670, 78 N. E. 190.

Though care proportionate to the danger must be exercised, and though the use of electricity at a high voltage is accompanied with a high and lurking degree of danger, and requires a high degree of care, yet, in the light of the settled Indiana rule, we must conclude that instructions eleven and fifteen were harmful to appellant, and that the jury was misled by them, for which reason the case is reversed.

Other errors have been assigned, which may not occur at a new trial. The judgment is reversed, and the case remanded for retrial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 94 N. E. 1015. See, also, under (1) 33 Cyc. 630; (3) 26 Cyc. 1397; (4) 31 Cyc. 83; (7) 13 Cyc. 385; (8) 26 Cyc. 1102; (9) 3 Cyc. 383. As to the liability of receivers of operating railroads, see 120 Am. St. 280. As to the duty of employers in a service involving the use of electric wires, see 100 Am. St. 537.