SMITH, ADMINISTRATRIX, *v.* CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 9,160. Filed November 1, 1917. Rehearing denied December 20, 1917. Transfer denied April 11, 1918.]

1. APPEAL.—*Term-Time Appeal.*—Where plaintiff prayed an appeal, but the amount of bond was not fixed, no sureties named, and no time given in which to file an appeal bond, it cannot be

said that plaintiff attempted to take a term-time appeal, as such steps were necessary preliminaries to perfecting such an appeal. p. 405.

2. APPEAL.—*Vacation.—Term-Time.—Failure to Perfect.—Effect.*— An appeal prayed and granted in term, if not perfected as such, will be treated and sustained as a vacation appeal, where the statutory requirements for such an appeal have been followed. p. 405.

3. APPEAL.—*Perfecting.—Certification of Record.*—Where, subsequently to the filing of appellee's motion to dismiss the appeal for improper certification of the record, appellant was granted permission to have the clerk amend the original certificate to the transcript, and a new certificate of the clerk of the trial court in due form was appended thereto bearing a date two days later than the granting of the permission, the new certificate substantially complied with the permission, and cured any defects in the original certification.  p. 406.

4. APPEAL.—*Bill of Exceptions.—Incorporation in Record.—Judge's Signature.—Filing.*—To incorporate a bill of exceptions in the record, it must be filed in the clerk's office after it has been signed by the trial judge.  p. 406.

5. APPEAL.—*Record.—Bill of Exceptions Containing the Evidence. —Recital as to Evidence.*—Where the judge's certificate to a bill of exceptions containing the evidence recited that the transcript of the evidence embodied in the bill was certified to be a full, true and complete report of the evidence given on the trial, the bill sufficiently showed that it contained all the evidence given at the trial, since such fact may be shown either by a statement in the bill itself, or in the judge's certificate thereto.  p. 407.

6. APPEAL.—*Record.—Assignment of Errors.—Separate Assignments.*—Where the assignment of errors, after giving the court and title of the cause, recited that "the appellant says there is manifest error prejudicial to appellant in the judgment and proceedings in this cause in this," following which were five separate and distinct assignments of error, separately stated and numbered, no one of which called in question more than one ruling of the trial court, the assignments were several and not joint. p. 407.

7. APPEAL.—*Waiver of Error.—Failure to Reserve Exception.*— Error, if any, in the action of the trial court striking out certain interrogatories to the jury is waived, where appellant fails to show that she reserved any exception to the court's ruling and the question is not otherwise presented in her brief.  p. 408.

8. APPEAL.—*Review.—Harmless Error.—Sustaining Motion for Peremptory Instruction.*—The action of the trial court in sustaining defendant's motion for a peremptory instruction does not

constitute reversible error, since the mere sustaining of the motion was not harmful to plaintiff, but the substantial and available error, if any, being in instructing the jury to find for defendant.   p. 408.

9.  TRIAL.—*Peremptory Instruction.—Consideration of Evidence.*— A trial court is authorized to direct a verdict in favor of a defendant only where there is an entire lack of evidence on some essential phase of the case necessary to a recovery, and, when a motion is made for such a verdict, it is for the court to say whether there is any evidence to support each material issue or fact, and if there is such evidence, its weight or probative value is for the jury, and, in event the evidence is conflicting, so much thereof as is favorable to the party making the motion is deemed withdrawn, for the purpose of deciding the question presented by the motion, and the court will consider only the evidence, if any, favorable to the opposite party.   p. 409.

10.  DEATH.—*Wrongful Death.—Actions.—Existence of Beneficiary. —Allegation and Proof.—Statute.*—Damages recovered under §285 Burns 1914, Acts 1899 p. 405, giving a right of action for wrongful death, inures to the exclusive benefit of the widow or widower, and children, if any, or next of kin, and if no such persons exist, the action cannot be maintained, so that the existence of some such beneficiary must be alleged and proved. p. 410.

11.  DEATH.—*Wrongful Death.—Actions.—Existence of Beneficiary. —Allegation and Proof.—Statute.*—In an action for wrongful death under §285 Burns 1914, Acts 1899 p. 405, it is unnecessary to name in the complaint the persons entitled to the damages, it being sufficient to allege and prove the existence of such persons.   p. 411.

12.  DEATH.—*Wrongful Death.—Actions.—Failure to Name Beneficiaries in the Complaint.—Distribution of Damages.*—In an action for wrongful death under §285 Burns 1914, Acts 1899 p. 405, the failure to name in the complaint certain persons who are entitled to share in the damages does not prevent them from participating in the distribution.   p. 411.

13.  DEATH.—*Wrongful Death.—Actions.—Complaint.—Naming Improper Beneficiaries.—Statute.*—In an action for wrongful death under §285 Burns 1914, Acts 1899 p. 405, the fact that certain persons are named in the complaint as next of kin who are not such within the meaning of the statute does not deprive an administrator of his right to maintain the action for the benefit of those who are proper beneficiaries.   p. 411.

14.  DEATH.—*Wrongful Death.—Actions.—Parties. — Statute.* — In an action for wrongful death under §285 Burns 1914, Acts 1899

p. 405, though the damages inure to the exclusive benefit of the widow, children and next of kin, they have no right to be parties, and cannot compromise or control the action. p. 411.

15. DEATH.—*Wrongful Death.—Actions.—Complaint.—Allegations as to Beneficiaries.—Statute.*—In an action under §285 Burns 1914, Acts 1899 p. 405, brought for the benefit of dependent next of kin, it is only necessary to allege such facts on that subject as will show that some one or more of such beneficiaries exist. p. 411.

16. DEATH.—*Wrongful Death.—Actions.—Identity of Beneficiaries. —Pleading.*—In an action for wrongful death under §285 Burns 1914, Acts 1899 p. 405, the identity of the beneficiaries only becomes important in determining the amount of damages, but such proof can be made under allegations of their existence made in general terms. p. 412.

17. DEATH.—*Wrongful Death.—Actions.—Defenses.—Statute.*—In an action for wrongful death under §285 Burns 1914, Acts 1899 p. 405, if next of kin are named or proved who are not beneficiaries within the meaning of the statute, and the damages of such alleged beneficiaries are greater than the damages of the real beneficiaries, the existence of the latter and the amount of damages sustained by them is a proper matter of defense. p. 412.

18. DEATH.—*Wrongful Death.—Actions.—Damages.—Distribution. —Statute.*—In an action for wrongful death under §285 Burns 1914, Acts 1899 p. 405, if beneficiaries are named in the complaint, or proof thereof is made under a complaint in general terms, distribution of the recovery is not limited to the persons actually entitled to receive the same under the statute, even to the exclusion of the persons so named or proved; such questions being for the determination of the court having probate jurisdiction. p. 412.

19. DEATH.—*Wrongful Death.—Actions.—Beneficiaries.—Proof.*—Where, in an action for wrongful death under §285 Burns 1914, Acts 1899 p. 405, the complaint named three aunts of decedent as the nearest of kin who were dependent upon him for support, proof of the nonexistence of grandchildren or other next of kin was not necessary to a recovery. p. 413.

20. RAILROADS.—*Injuries on Tracks.—Trains Passing at Station.*—A railroad company is under a common-law duty to use caution in passing with one train another train receiving and discharging passengers at a station. p. 415.

21. RAILROADS.—*Injuries on Tracks.—Trains Passing Station.—Negligence.—Violation of Rule.*—The violation by a railroad of its rule to the effect that "trains must use caution in passing a train receiving and discharging passengers at a station, and must not pass between it and the platform at which the passengers are being received or discharged," was not negligence *per se*, but was proper, in an action for wrongful death, as an item of

evidence tending to show the degree of care recognized by the road as ordinary care under the conditions specified in the rule. p. 415.

22. RAILROADS.—*Injuries on Tracks.—Care Required*—Where the tracks of a railroad curved sharply to the east and west of a station, and passed through deep cuts and between high hills, so as to obstruct the view of approaching trains, it was the duty of the road's servants operating a train to use reasonable care to ascertain if a train was at the station discharging passengers and, if so, to stop, as required by a rule of the railroad and not attempt to pass between the standing train and the station platform, and to have used such reasonable care as might be necessary for the protection of any person lawfully using the tracks at that point. p. 416.

23. RAILROADS.—*Injuries on Tracks.—Reasonable Care.—What Constitutes.*—What constitutes reasonable care on the part of railroad employes operating a train for the protection of persons lawfully using the tracks at a station depends upon circumstances, and may require constant outlook after the place of possible danger is visible, the giving of warning signals, reduction of speed, or even stopping the train. p. 416.

24. TRIAL.—*Directing Verdict.—Power of Trial Court.—Weighing Evidence.*—The trial court cannot weigh the evidence to determine the facts involved in order to direct a verdict. p. 416.

25. RAILROADS.—*Injuries on Tracks.—Negligence.—Jury Question.* —In an action against a railroad for the death of one using its tracks at a station, the complaint being grounded on defendant's alleged negligence in running its train past another train discharging passengers at a station in violation of its rules and without using due care, where the evidence was conflicting as to the speed of the train, when the steam was shut off and whether warning signals were given, the question of defendant's negligence under the circumstances was for the jury, so that the court was not warranted in directing a verdict for defendant. p. 416.

26. DEATH.—*Wrongful Death.—Contributory Negligence.—Statutes.*—In an action for wrongful death under §285 Burns 1914, Acts 1899 p. 405, it is not necessary for plaintiff to allege or prove want of contributory negligence on the part of decedent, since contributory negligence in such an action is made a matter of defense by the provisions of §362 Burns 1914, Acts 1899 p. 58. p. 417.

27. DEATH.—*Wrongful Death.—Contributory Negligence.—Jury Question.—Directing Verdict.*—As a rule, in actions for wrongful death, decedent's contributory negligence is a question for the jury, and only becomes a question of law for the court when the

402        APPELLATE COURT OF INDIANA,

Smith, Admx., *v.* Cleveland, etc., R. Co.—67 Ind. App. 397.

circumstances are such that but one inference can be drawn by reasonable minds with reference to decedent's conduct upon the particular occasion, and if there is evidence indicating contributory negligence, regardless of its weight and character, the court is not justified in directing a verdict against plaintiff if there is evidence to the contrary, though such evidence is apparently overborne by other evidence more convincing. p. 417.

28. RAILROADS.—*Injuries on Tracks.—Trespasser.*—Where one went to a railroad station to ship a case of eggs, and after doing so, decided to wait for a milk can he was expecting on another train, he was not a trespasser, but was rightfully on the railroad's premises, bound to exercise reasonable care for his own safety commensurate with the dangers of which he had either actual or constructive knowledge. p. 418.

29. DEATH.—*Wrongful Death.—Actions.—Directed Verdict.—Evidence.—Contributory Negligence.*—Where one rightfully on the premises of a railroad was killed at its station, mere absence of evidence of the exercise of reasonable care by decedent would not authorize a directed verdict for the railroad in an action for the death, but only such affirmative evidence as would impel but one inference—that of contribtuory negligence when considered by reasonable minds. p. 418.

30. RAILROADS.—*Injuries on Tracks.—Contributory Negligence.—Care Required.*—Due care for his own safety required a person on the station premises of a railroad to use reasonable diligence and caution to protect himself from all dangers arising from the operation of passing trains in a prudent and proper manner, and in such other manner as may have been, or could have been, known to him by the exercise of ordinary care under the circumstances, but he was not required to use such unusual and extraordinary care as would be necessary for his protection from dangers arising from the reckless or negligent operation of passing trains of which he had no knowledge, either actual or constructive, in time to escape. p. 418.

31. RAILROADS.—*Injuries on Tracks.—Anticipating Negligence.—Presumption as to Speed.*—One rightfully on the station premises of a railroad has a right to assume, in the absence of knowledge or warning to the contrary, that trains will not be operated at an excessive speed, and without due signals, or in any other negligent manner. p. 419.

32. RAILROADS.—*Injuries on Tracks.—Contributory Negligence.—Conflicting Evidence.—Jury Question.*—Where one was killed on a railroad's station premises by one train passing another train which was receiving and discharging passengers, and the evidence, in an action for the death, was conflicting as to the care used in operating the train striking decedent, both as to its speed

and where and when warning signals, if any, were given, and the jury might have found, on weighing the evidence, that decedent was rightfully on the track, and used reasonable care for his own safety as against all known danger, or danger which he might reasonably have anticipated or known by the exercise of due care, but notwithstanding such care he was killed because of the negligent manner in which the train was operated under the existing circumstances, the question of decedent's contributory negligence was for the jury. p. 419.

33. DEATH.—*Wrongful Death.—Actions.—Damages.—Evidence.—* In an action for wrongful death, evidence that decedent was an industrious, successful and experienced farmer was admissible as bearing on the damages to decedent's next of kin, part of whom lived with him on a farm owned jointly by them. p. 420.

34. APPEAL.—*Presenting Questions for Review.—Judgment.—Correction.—Motion to Modify.—*A motion to modify is the proper procedure to correct an erroneous judgment, and such motion must be made to present any question on appeal as to the correctness of the judgment. p. 421.

35. EXECUTORS AND ADMINISTRATORS.—*Administrator's Action for Wrongful Death.—Taxing Costs of Decedent's Estate.—Statute.—* In an administrator's action for wrongful death under §285 Burns 1914, Acts 1899 p. 405, the trial court had no authority to adjudge, on the administrator being defeated in the action, that the costs be paid from decedent's estate. p. 421.

36. EXECUTORS AND ADMINISTRATORS.—*Actions by.—Costs.—*When an administrator sues in his trust capacity, judgment should be rendered against him in such capacity for costs where he fails in an action, and the costs should be paid from the funds in his hands belonging to the branch of his trust to which such suit pertained, and, if there be no funds in that branch of his trust, the costs must remain unpaid, since they cannot be charged against the administrator personally. (*Brunning* v. *Golden* [1902], 159 Ind. 199, distinguished.) p. 423.

From Dearborn Circuit Court; *Warren N. Hauck,* Judge.

Action by Susie Smith, administratrix of the estate of Frank Hiett, deceased, against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Estel G. Bielby* and *Richard L. Ewbank*, for appellant.

*Thomas S. Cravens, L. J. Hackney* and *F. L. Littleton*, for appellee.

BATMAN, J.—This is an action by appellant against appellee to recover damages on account of the death of appellant's decedent, alleged to have been caused by appellee's wrongful acts. The complaint is in three paragraphs; the first being grounded on the alleged negligence of the appellee in failing to establish and enforce proper and safe rules for the management of its trains, and the negligent operation of its trains without such rules; the second, on alleged negligence in operating its trains under the circumstances and conditions described therein; and the third, upon the theory of the last clear chance. The issues were closed by a general denial, and were submitted to a jury for trial. After appellant had closed her evidence, appellee moved the court to instruct the jury to return a verdict in favor of appellee, which motion was sustained, and an exception to such ruling was reserved. The court thereupon directed the jury to return a verdict for appellee, which was accordingly done. Appellant filed her motion for a new trial, which was overruled, and an exception reserved. The court thereupon rendered the following judgment, to which appellant objected and excepted, to wit: "It is therefor considered and adjudged by the court that the plaintiff take nothing by reason of her cause of action herein, and that the defendant do have and recover of and from the plaintiff, payable out of the assets of the estate of the decedent, Frank Hiett, its costs herein laid out and expended taxed at $———." Appellant thereupon filed her

motion to modify said judgment in so far as it gave judgment against the estate of said decedent for costs, by striking therefrom that portion thereof, directing such costs to be paid out of the assets of the estate of said decedent. The court overruled this motion, and the appellant reserved an exception to such ruling. Appellant appealed, and has called in question by an assignment of errors the action of the court in sustaining appellee's motion to strike out certain interrogatories, in overruling her motion for a new trial, and in overruling her motion to modify the judgment as to costs.

Appellee has filed its motion to dismiss the appeal herein, for the reason that appellant attempted to take a term-time appeal, but failed to perfect it by not filing the record in this court within the time allowed by law for a term-time appeal, and for the further reason that the record is not properly certified.

The record shows that at the time the court overruled appellant's motion to modify the judgment, she prayed an appeal which was granted. No amount of bond was fixed, no sureties were named, nor time given in which to file an appeal bond. These were necessary preliminary steps for perfecting a term-time appeal, and since they were not taken, we do not believe it can be said that appellant attempted to take a term-time appeal by the mere praying of an appeal and having the same granted. The fact that appellant omitted such essential steps may well lead to the conclusion that a vacation appeal was contemplated at the time. But be that as it may, we deem it well settled that an

2. appeal prayed and granted in term, if not perfected as such, will be treated and sustained

as a vacation appeal, where the statutory requirements for such an appeal have been followed. *Burns v. Trustees, etc.* (1903), 31 Ind. App. 640, 68 N. E. 915; *Kellogg v. Ridgely* (1907), 40 Ind. App. 423, 81 N. E. 1158. In regard to the certification of the record it may be noted that subsequently to the filing of appellee's motion to dismiss, appellant was granted permission to have the clerk amend the original certificate to the transcript. Such permission was granted on June 23, 1915, and there is now appended to the transcript a new certificate of the clerk of the trial court in due form, bearing the date of June 25, 1915. This is a substantial compliance with the permission granted, and cures any defects in the original certification. Appellee's motion to dismiss must therefore be overruled.

Appellee, in its brief on the merits, points out several objections to the record, which it claims is fatal to the appeal. We will now consider these objections. It is claimed that appellant's bill of exceptions No. 2, on the action of the court in giving the peremptory instruction to the jury, cannot be considered a part of the record, as it appears from the bill itself that it was not signed until the day following the date on which it was filed by the judge with the clerk. This objection has been cured subsequently to the filing of appellee's brief by the return to a writ of *certiorari,* issued from this court on June 20, 1917, which shows that such bill of exceptions was in fact filed in the office of the clerk of the Dearborn Circuit Court on November 12, 1914, after it had been signed by the judge trying said cause. Such objection therefore requires no further consideration. Appellee also claims that there is no

recital in the transcript that appellant's bill of exceptions were made a part of the record in the cause, but in making this claim it is evidently mistaken, as appears from the record showing the filing of the same.

Appellee further claims that appellant's bill of exceptions No. 1, containing the evidence, does not recite that it contains all the evidence given in the cause, and that therefore such evidence cannot be considered. It has been repeatedly held that this fact may be shown either by a statement in the bill itself, or in the judge's certificate thereto. *Ehrisman* v. *Scott* (1892), 5 Ind. App. 596, 32 N. E. 867; *Jordan* v. *Muth* (1892), 6 Ind. App. 655, 34 N. E. 29; *Petree* v. *Fielder* (1891), 3 Ind. App. 127, 29 N. E. 271; *Great Council, etc.* v. *Green* (1912), 52 Ind. App. 198, 100 N. E. 472. We have examined the bill of exceptions and find that the judge's certificate thereto recites the following: "The foregoing longhand copy and transcript of the evidence, now embodied in the foregoing bill of exceptions, is hereby made a bill of exceptions for the plaintiff in the above entitled cause, and is hereby certified to be a full, true, and complete report of the evidence presented on said trial and contains all of the evidence given in the trial of said cause." We consider this a substantial compliance with the requirement in this regard.

Appellee also claims that the assignment of errors is joint and not several as to the errors alleged, and that the court must sustain each assignment in order that appellant may prevail on appeal. An examination of the assignment of errors does not disclose that they are joint as claimed by appellee. Such assignment after giving the court,

and title of the cause states as follows: "The appellant says there is manifest error prejudicial to appellant in the judgment and proceedings in this cause in this:" Here follow five separate and distinct assignments of error, separately stated and numbered, no one of which calls in question more than one ruling of the court. We hold that the assignments are several and not joint as contended by appellee.

When we come to consider the record on the merits of the questions raised by appellant, we find that she has waived her first and second assignments of error, relating to the action of the court in striking out certain interrogatories, by not showing that she reserved any exception to the court's ruling thereon, and in not otherwise presenting the same in her brief. The third assignment of error is based on the action of the court in overruling appellant's motion for a new trial. Several reasons are assigned therein, which we shall consider in their order as stated.

The first of such reasons relate to the action of the court in sustaining appellee's motion for a peremptory instruction. This action of the court does not constitute reversible error, since the mere sustaining of such motion worked no injury to appellant, but the substantial and available error, if any, was in instructing the jury to find in favor of appellee. *Getchel* v. *Chicago Junction R. Co.* (1902), 29 Ind. App. 410, 64 N. E. 618.

The second, third, fourth, and fifth reasons relate to the action of the court in giving the jury a peremptory instruction to return a verdict for appellee. The sixth alleges that the verdict of the jury is not

sustained by sufficient evidence, and the seventh alleges that the verdict is contrary to law. These several reasons for a new trial, in so far as they are properly assigned and presented, in their final analysis present the same question, viz.: Did the trial court err in peremptorily instructing the jury to return a verdict for appellee?

It is well settled that a trial court is only authorized to direct a verdict in favor of a defendant in an action where there is an entire lack of evidence on some essential phase of the case necessary to a recovery. Where a motion is made for such a verdict, it is for the court to say whether there is any evidence to support each material issue or fact, and if there is such evidence, its weight or probative value is for the jury, and not for the court. If there is conflict in the evidence, so much thereof as is favorable to the party making such motion is deemed withdrawn, for the purpose of deciding the question presented by the motion, and the court will consider only the evidence, if any, favorable to the opposite party. *Jackson Hill Coal, etc., Co.* v. *Bales* (1915), 183 Ind. 276, 108 N. E. 962; *Sullivan* v. *Indianapolis, etc., Traction Co.* (1913), 55 Ind. App. 407, 103 N. E. 860; *Bennett* v. *Chicago, etc., R. Co.* (1911), 50 Ind. App. 264, 98 N. E. 192.

Appellant claims that there was evidence which at least tended to support every material fact alleged in her complaint, and that the directed verdict, therefore, was unauthorized, while appellee contends that there was no evidence to establish certain material facts necessary for a recovery, and the verdict, therefore, was properly directed.

We shall first consider the evidence on the allega-

tions of the complaint, as to the existence of next of kin on which appellee raises a question. Each paragraph of the complaint contains the following averments: "That said decedent left surviving him three aunts, sisters of his deceased mother, who were dependent upon him for support. That said surviving dependent aunts of said decedent were and are named as follows, Melissa Smith, Sophia Smith, Susie E. Smith, the last named being the plaintiff in this action, and said surviving aunts of said decedent are the nearest of kin of said decedent who were dependent upon him for support." Appellee contends that under such allegations it was necessary for appellant to prove on the trial not only that such persons were decedent's aunts and dependent on him for support but also that they were his nearest of kin thus dependent. On this point appellee insists that there was no evidence that decedent did not leave dependent grandchildren surviving him, and that therefore there was a total want of evidence to establish the material fact that such aunts were the nearest of kin dependent on him for support. We do not find that this identical question has been expressly decided in this state. Appellee does not cite any such authority, and our investigation discloses none. However, there are some decisions which throw light on the question under consideration, among which we cite the following: Damages recovered under §285 Burns 1914, Acts 1899 p. 405, inures to the exclusive benefit of the widow or widower, and children, if any, or next of kin. If no such persons exist, the action cannot be maintained, and hence the existence of some such beneficiary must be alleged and proved. *Stewart, Admr., v. Terre Haute, etc.,*

*R. Co.* (1885), 103 Ind. 44, 2 N. E. 208; *Chicago, etc., R. Co.* v. *LaPorte* (1904), 33 Ind. App. 691, 71 N. E. 166; *Wabash R. Co.* v. *Cregan, Admr.* (1899), 23 Ind. App. 1, 54 N. E. 767. It is unnecessary to name the persons entitled to such damages, but it will be sufficient to allege and prove the existence of such persons. *Indianapolis, etc., R. Co.* v. *Keeley's Admr.* (1864), 23 Ind. 133; *Jeffersonville, etc., R. Co.* v. *Hendricks, Admr.* (1872), 41 Ind. 48; *Commercial Club, etc.* v. *Hilliker* (1898), 20 Ind. App. 239, 50 N. E. 578. The failure to name in the complaint certain persons who are entitled to share in such damages does not prevent them from participating in the distribution of the same. *Duzan* v. *Myers* (1902), 30 Ind. App. 227, 65 N. E. 1046, 96 Am. St. 341. The fact that certain persons are named in the complaint as next of kin who are not such within the meaning of the statute, does not deprive an administrator of his right to maintain the action for the benefit of those who are proper beneficiaries. *Clore* v. *McIntire, Admr.* (1889), 120 Ind. 262, 22 N. E. 128. The widow, children, and next of kin are not parties. They have no right to be parties, and cannot compromise or control the action. *Cleveland, etc., R. Co.* v. *Osgood* (1905), 36 Ind. App. 34, 73 N. E. 285; *Yelton, Admr.,* v. *Evansville, etc., R. Co.* (1893), 134 Ind. 414, 33 N. E. 629, 21 L. R. A. 158.

It therefore appears that in an action under §285, *supra,* brought for the benefit of dependent next of kin, it is only necessary to allege such facts on that subject as will show that some one or more of such beneficiaries exist.

The identity of such beneficiaries only becomes

important in determining the amount of damages, but such proof can be made under allegations of their existence made in general terms. If next of kin are named or proved who are not beneficiaries within the meaning of the statute, no harm results to the defendant charged, unless the damages of such alleged beneficiaries are greater than the damages of the real beneficiaries. In that event their existence and amount of damages sustained is a proper matter of defense. If beneficiaries are named in the complaint, or proof is made thereof under a complaint in general terms, the distribution is not limited to the persons so named or proved, but will be distributed to the persons actually entitled to receive the same under the statute, even to the exclusion of the persons so named or proved. Such questions are for the subsequent determination of the court having probate jurisdiction. *Duzan* v. *Myers, supra; Missouri, etc., R. Co.* v. *Barber* (1890), 44 Kan. 612, 24 Pac. 969, cited with approval in the case of *Chicago, etc., R. Co.* v. *LaPorte, supra.*

Appellee also contends that the evidence shows that the three beneficiaries named in the complaint and the decedent were conducting a business together in pursuance of a contract, under such circumstances as to preclude a recovery by reason of a failure to show that such maiden aunts were dependent on decedent, within the meaning of the statute. We do not consider the evidence on this point of such a character as to require the court to say, as a matter of law, that their relations were purely contractual. It was of such a character that the jury, after weighing the evidence, might have concluded that such

aunts suffered a pecuniary loss in being deprived of decedent's services. *Smith* v. *Michigan Cent. R. Co.* (1904), 35 Ind. App. 188, 73 N. E. 928; *Henry* v. *Prendergast* (1912), 51 Ind. App. 43, 94 N. E. 1015.

19. We therefore conclude that proof of the non-existence of grandchildren or other next of kin was not necessary to a recovery, and that the evidence given with reference to the relationship and dependency of the aunts named required the issue thereon to be submitted to the jury, if there was evidence on all other material allegations. It will be noted that in this case there was no evidence of any dependent next of kin, other than those named in the complaint. If appellant has sought to recover on proof of other dependent next of kin in addition to, or to the exclusion of those named, a different question might have arisen which we need not consider here. *Quincy Coal Co.* v. *Hood, Admr.* (1875), 77 Ill. 68; *Chicago, etc., R. Co.* v. *LaPorte, supra.*

We shall now consider whether there was such evidence on the allegations of negligence, on the part of appellee, as authorized the giving of such peremptory instruction. The evidence introduced on the trial tended to establish the following facts: That at the time of the acts mentioned in the complaint, and for a long time prior thereto, appellee had maintained a double track through the station of Guilford, Indiana, extending in an easterly and westerly direction; that the east-bound trains were operated on the south track, and the west-bound trains were operated on the north track; that the depot at said station was located on the north side of said double track, and a cinder platform was maintained on the south side thereof, which was used in receiving and discharging freight

and passengers on trains coming from the west and going toward the east; that said railroad tracks are much curved both to the east and west of said station, and pass through deep cuts and between high hills, so as to obstruct the view of approaching trains; that when an east-bound train was standing on said south track, it cut off the view of a west-bound train on the north track, so that it could not be seen by a person standing on such track at the station until it was within 450 or 500 feet; that it was the custom at such time, and had been for many years prior thereto, for passengers and shippers, who used the east-bound trains of appellee for transportation, to cross said double track at such station to enter said trains and to deliver and receive their shipments; that at times such patrons of appellee would pass around the ends of such trains for such purpose; that appellee had knowledge of such custom, and had constructed a walkway across said tracks at said station to facilitate its patrons therein; that said west-bound train usually passed said east-bound train west of the station of Guilford, but that it was behind time on this occasion, and that its operators should have anticipated that said east-bound train might be at such station discharging passengers when it passed the same. It was also in evidence that appellee had theretofore established the following rule for the operation of its trains, which was in force at the time of the injury to appellant's decedent:

"Trains must use caution in passing a train receiving and discharging passengers at a station, and must not pass between it and the platform at which the passengers are being received or discharged,"—

but that appellee had construed such rule as not applying at the station of Guilford, Indiana, for the reason that passengers were received and discharged from the east-bound trains on the south side of the east-bound track, and not between the east-bound track and the west-bound track.

There was evidence from which the jury might have concluded that the passengers from the east-bound train on the occasion decedent was killed were in fact being discharged on the platform on the north side of the double track, adjacent to the depot, by being first required to alight on the cinder platform on the south side, and from thence to cross over such double track to the platform on the north side, in order to reach the depot; that such platform on the north side, therefore, was the actual place of discharge, notwithstanding such indirect or circuitous. route.

It is apparent that the first part of said rule added nothing to the duty of appellee, not already imposed by the common law, but the latter part thereof enjoined a specific act of caution, under the conditions named, which might or might not be the same degree of care required by the common law, depending on whether or not the conditions and circumstances existing at said time and place were such that the ordinary care required by the common law would require such train to stop. Such rule, therefore, was applicable at said station of Guilford. However, the violation of such rule would be, in no event, negligence *per se,* but was proper as an item of evidence tending to show the degree of care recognized by appellant as ordinary care, under the conditions specified in such rule.

Under the undisputed evidence it was clearly the duty of appellee's servants operating said west-bound train, under the common law as well as such rule, to have used reasonable care to ascertain if such train was at such station discharging passengers at such time and, if so, to have observed such rule and used such reasonable care as might be necessary for the protection of any person lawfully using such track at the station at such time. *Manion* v. *Lake Erie, etc., R. Co.* (1907), 40 Ind. App. 569, 80 N. E. 166; *Virgin* v. *Lake Erie, etc., R. Co.* (1913), 55 Ind. App. 216, 101 N. E. 500; *Pittsburgh, etc., R. Co.* v. *Lynch* (1908), 43 Ind. App. 177, 87 N. E. 40; *Cleveland, etc., R. Co.* v. *Miles* (1903), 162 Ind. 646, 70 N. E. 985. What constitutes reasonable care depends upon the circumstances, and may require constant outlook, after the place of possible danger is visible, the giving of warning signals, and reduction in speed, or even stopping the trains, in order to discharge the duty imposed.

The evidence is conflicting as to the rate of speed at which such west-bound train was going when it reached Guilford station. Some witnesses placed it as fast as sixty miles per hour. The evidence is also conflicting as to when the steam was shut off and the brakes applied, if at all; what warning signals were given and where given, if any. In order for the trial court to determine the facts involved, it would have been necessary to weigh the evidence, which it cannot do in order to direct a verdict. We therefore conclude that there was not such a want of evidence as to the acts of negligence charged as to warrant the court in directing a verdict in favor of appellee. Appellee

further contends that the court below was required to direct a verdict in its favor because the evidence showed that appellant's decedent was guilty of negligence contributing to his own injury. In this contention we do not concur. It should be remembered that in actions of this kind it is not necessary for the plaintiff to allege or prove the want of contributory negligence on the part of the plaintiff or on the part of the person for whose injury or death the action is brought, but contributory negligence on the part of the plaintiff or such other person is a matter of defense. §362 Burns 1914, Acts 1899 p. 58. As a rule, it is a question for the jury, and only becomes a question of law for the court when the circumstances are such that but one inference can be drawn by reasonable minds with reference to the plaintiff's conduct upon the particular occasion. If there be evidence indicating contributory negligence, no matter what its weight or character, still a court would not be justified in directing a verdict against a plaintiff on that account, if, in fact, there is evidence to the contrary, although it may apparently be overborne by other evidence more convincing. *Beaning* v. *South Bend Electric Co.* (1909), 45 Ind. App. 261, 90 N. E. 786. In this case there was some evidence to indicate that appellant's decedent had been a shipper on appellee's road from the station in question for many years; that on the day he met his death he had gone to such station to ship a case of eggs on appellee's road; that he crossed from the depot over the double track to the cinder platform, and deposited his case of eggs, and then recrossed the double track to the depot; that he was preparing to return home when

he learned the east-bound train was coming, and decided to wait for a milk can he was expecting on such train; that as such train approached he stepped out on the north track where he stood talking to one Buchanan; that just as said train was coming in Buchanan passed on over to the cinder platform and decedent went back to the platform at the depot; that he stood on such platform until the east-bound train was about to depart and then started to cross over said double track to the cinder platform for his milk can; that when he reached the north track he stopped for such train to pull by and while so doing he called to an acquaintance on the moving train, waved to him, and was struck and killed in an effort to leave said north track.

Under such circumstances said decedent would not have been a trespasser, merely loitering, as suggested by appellee, but would rightfully be on such 28. premises, bound, however, to exercise reasonable care for his own safety commensurate with the dangers of which he had either actual 29. or constructive knowledge. Mere absence of evidence of the exercise of such care would not authorize a directed verdict for appellee, but only such affirmative evidence as would impel but one inference—that of contributory negligence when considered by reasonable minds. Such care required the decedent to use reasonable diligence and caution to protect himself from all dangers arising from the operation of passing trains on said north track 30. in a prudent and proper manner, and in such other manner as may have been, or could have been, known to him by the exercise of ordinary care under the circumstances; but he was not required to

use such unusual and extraordinary care as would be necessary for his protection from dangers arising from the operation of passing trains in a reckless or otherwise negligent manner of which he had no knowledge, either actual or constructive, in time to escape. The evidence is such that the jury might have found, if it had been permitted to weigh the evidence, that the train which killed decedent was being negligently operated by reason of excessive speed and want of proper signals, under the existing circumstances, but there is no evidence that the decedent knew that such train was being so operated, and no evidence from which such an inference could be properly drawn. He cannot be held to be at fault for failing to anticipate negligence on the part of appellee. In fact he had a right to assume, in the absence of knowledge or warning to the contrary, that appellee's trains would not be operated at excessive speed, and without due signals, or in any other negligent manner. *Indianapolis Street R. Co.* v. *Hoffman* (1907), 40 Ind. App. 508, 82 N. E. 543; *Louisville, etc., Traction Co.* v. *Lottich* (1915), 59 Ind. App. 426, 106 N. E. 903; *Indiana Union Traction Co.* v. *Cauldwell* (1915), 59 Ind. App. 513, 107 N. E. 705.

The evidence in this case was conflicting as to the care used in operating the train in question, both as to speed and signals, and the jury might have found, on weighing the evidence, that the decedent was rightfully on the track and used reasonable care for his own safety as against all known danger, or danger which he might reasonably have anticipated or known by the exercise of due care, but notwithstanding such care he was killed because of the reckless and consequently negligent man-

ner in which appellee operated its train under the existing circumstances. The question, therefore, was one of fact for the jury, and not one of law for the court.

The eighth and ninth reasons assigned for a new trial need not be considered, since they are fully covered by our conclusion with reference to other reasons already determined.

The tenth and eleventh reasons assigned for a new trial call in question the action of the court in excluding certain oral evidence offered by the witness Harry Huddleston. The particular question asked was as follows: "I wish you would state to the jury if you know, what kind of a farmer Mr. Hiett was prior to his death?" The offer to prove was as follows: "The plaintiff expects to prove in answer to the question that Frank Hiett, deceased, was an industrious farmer, a good producer from the farm, and an experienced scientific farmer." The court sustained an objection to the question, and in so doing committed error. One of the questions at issue was the amount of damages sustained by the alleged next of kin on account of decedent's death. There was evidence tending to show that he lived with certain next of kin in a common family on a farm they owned jointly, and from which a fund was produced from which all lived as such family; that in this way he rendered valuable services to such next of kin, of which they were deprived by his death to their damage. Under such circumstances the offered evidence was clearly competent, and it was error to exclude it, since the loss would be greater if he was an industrious and experienced farmer, than it would be if he was indolent and a mere novice. *Pittsburgh,*

*etc., R. Co.* v. *Parish* (1901), 28 Ind. App. 189, 62 N. E. 514, 91 Am. St. 120. We therefore conclude that the court erred in overruling appellant's motion for a new trial.

The fourth and fifth assignments of error relate to the action of the court in rendering judgment against the estate of appellant's decedent for costs, and in overruling her motion to modify such judgment with reference thereto. The courts have held that a motion to modify is the proper procedure to correct an erroneous judgment, and that such motion must be made to present any such question on appeal. *Migatz* v. *Stieglitz* (1905), 166 Ind. 361, 77 N. E. 400; *Home Brewing Co.* v. *Johnson* (1907), 41 Ind. App. 44, 83 N. E. 358.

The question presented by the motion of appellant to modify the judgment as to costs is as to the right of a court to adjudge that the costs in a suit brought by an administrator for the death of his decedent caused by the wrongful acts or omissions of another under §285 Burns 1914, *supra,* be paid from the estate of such decedent, where such administrator is defeated in such action. Our conclusion is that the court has no such authority, and that error was committed in overruling appellant's motion to modify the judgment in this case in that regard.

This exact question does not seem to have been presented to this or the Supreme Court in many cases, but we find that it has been decided against appellee's contention in the case of *Brooks* v. *Muncie, etc., Traction Co.* (1911), 176 Ind. 298, 95 N. E. 1006. That was a case of the same nature as the one at bar, where an administrator brought suit for the alleged neg-

ligent killing of his decedent. The jury returned a verdict for the defendant and judgment was rendered thereon in the following form: "It is therefore considered by the court that plaintiff take nothing by his action herein, and that defendant have and recover of and from the plaintiff its costs in this behalf laid out and expended, taxed at $————." The plaintiff appealed, and asserted that the assets of decedent's estate are not liable for costs, as such estate has no interest whatever in the result of such suit, and that judgment cannot be properly rendered against the estate for such costs. The court in passing upon this question said on page 307: "This action was brought under §285 Burns 1908, Acts 1899 p. 405, by the administrator, for the exclusive benefit of decedent's widow. The judgment is not a lien on the assets of decedent's estate, but is against the plaintiff suing in the capacity provided for in §285, *supra.*" Here the Supreme Court, in effect, holds that the judgment was in proper form in being rendered against the plaintiff in his trust capacity, being the capacity in which he sued, but that it did not follow, by the form of such judgment, that the assets of such estate were liable for the payment of such costs, by expressly holding that the judgment is not a lien on the assets of decedent's estate. There is nothing unreasonable or inconsistent in such a holding. The administrator of the estate of a decedent who has met his death through the negligence of another, while serving in the single capacity of administrator, has duties to perform in two separate and distinct capacities, one being to administer the personal estate possessed by decedent at the time of his death, and the other being to prosecute an action for damages on account of such

NOVEMBER TERM, 1917. 423

Smith, Admx., *v.* Cleveland, etc., R. Co.—67 Ind. App. 397.

negligent killing under §285 Burns 1914, *supra,* and distribute the proceeds derived therefrom in accordance therewith. Such proceeds cannot be used to pay the debts of decedent or the liabilities of his estate; neither can the assets of the estate be used to pay the costs made in the prosecuting of such statutory proceedings. In any case, when an administrator sues in his trust capacity, judgment should be rendered against him in such capacity for costs where he fails in such action. Such costs, however, should be paid from the funds in his hands belonging to that branch of his trust to which such suit pertained, and if there be no funds in that branch of his trust, such costs must remain unpaid, as in case of any insolvent litigant, since they cannot be charged to the administrator personally. *Evans, Admx.,* v. *Newland* (1870), 34 Ind. 112; *Cavanaugh, Admr.,* v. *Toledo, etc., R. Co.* (1874), 49 Ind. 149. Any other construction would work manifest injustice in many instances against creditors, and against heirs and legatees, who were not entitled to recover under §285, *supra.* Illustrations of this will readily occur on reflection. The case of *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95, 67 N. E. 923, supports the conclusion we have reached. The question under consideration by the court in that case was as to the competency of a party to testify as a witness, rather than the determination of a question of costs, but the reasoning is pertinent, as the court gives as a reason for the competency of the witness in question the fact that in actions brought under §285, *supra,* the assets of an estate are not liable for costs or other charges accruing therein, and under no circumstances can judgment be rendered against an estate therefor. Ap-

pellee cites the case of *Bruning* v. *Golden* (1902), 159 Ind. 199, 64 N. E. 657, in support of his contention, but that case differs in an essential point from the one at bar, in this, that the costs in that case did not grow out of an action prosecuted under §285, *supra,* but out of an action involving assets alleged to have been left by decedent at the time of his death. In view of what we have already said the difference is obvious, and the case cited does not support appellee's contention. Appellee also cites the case of *Chicago, etc., R. Co.* v. *Harshman, Admr.* (1898), 21 Ind. App. 23, 51 N. E. 343, in support of his contention. That case was decided in 1898, while the case of *Brooks* v. *Muncie, etc., Traction Co., supra,* was decided by the Supreme Court in 1911, and impliedly overrules the same, in so far as there is conflict between the two decisions on the question of costs.

Judgment reversed, and cause remanded, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 117 N. E. 354. Master and servant: violation by servant of rule adopted by railroad company for protection of the public, as evidence of negligence toward a member of the public, 8 L. R. A. (N. S.) 1063. See under (9) 38 Cyc 1586, 1577; (10) 17 C. J. 1215, 1285, 1286; (11) 17 C. J. 1285, 1286, 1301; (12) 17 C. J. 1287; (13) 17 C. J. 1286; (14) 17 C. J. 1269, 1271; (15) 17 C. J. 1285; (16) 17 C. J. 1285, 1301; (17) 17 C. J. 1240; (18) 17 C. J. 1226, 1287; (19) 17 C. J. 1301; (20) 33 Cyc 808; (21) 33 Cyc 808, 881; (22) 33 Cyc 808; (23) 33 Cyc 808; (24) 38 Cyc 1587; (25) 33 Cyc 896; (26) 17 C. J. 1283; (27) 17 C. J. 1311; (28) 33 Cyc 844; (30) 33 Cyc 844; (31) 33 Cyc 836, 837; (32) 33 Cyc 904; (33) 17 C. J. 1328; (34) 3 C. J. 874; (35) 18 Cyc 1095; (36) 18 Cyc 1095.